COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| LAS PALMAS MEDICAL CENTER, | § | No. 08-09-00226-CV |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | County Court at Law No. 3 |
|  | § |  |
| ROBERT MOORE, M.D. and | § | of El Paso County, Texas |
| DEBORA MOORE, M.C., | § |  |
|  | § | (TC # 2008-3573) |
| Appellees. | § |  |

**O P I N I O N**

Las Palmas Medical Center appeals an order denying its motion to confirm an arbitration award, vacating the arbitration award, and ordering a new arbitration proceeding. For the reasons that follow, we reverse and render judgment confirming the arbitration award.

**FACTUAL SUMMARY**

Las Palmas Medical Center is a hospital operating in El Paso. Faced with a shortage of urologists in El Paso in 2004, Las Palmas recruited Robert Moore, M.D. and Debora Moore, M.D., to relocate from Houston to El Paso. The terms of the recruiting agreement required that both doctors obtain and maintain full medical privileges at Las Palmas, maintain medical staff membership in good standing, and engage in the private practice of medicine as urologists in the community for forty-eight months. The recruiting agreements guaranteed each doctor income for two years and provided that Las Palmas would advance the difference between the guaranteed monthly income and the gross receipts of their practice. Las Palmas agreed to forgive 1/24 of the advances for every month the doctors remained in full-time practice in El Paso after the end of the

guarantee period. At the end of the guarantee period, each doctor was obligated to pay to Las Palmas the sum of the advances less the amounts forgiven under the terms of the agreement. The recruiting agreements permitted Las Palmas to audit the doctors' books and records to assure compliance. The parties agreed to arbitrate any disputes arising out of or related to the recruiting agreements.

In December 2006, Las Palmas requested accounts receivable and monthly aging reports by January 15, 2007. The Moores did not provide the information and on February 21, Las Palmas informed them that an audit would be conducted by an independent firm. The parties disagree about the degree of the Moores' cooperation after this point. Las Palmas contends that an audit scheduled for March 12 had to be postponed and rescheduled because documents requested by the CPA firm were not provided. On June 18, Las Palmas' attorney Monte James of Jackson Walker L.L.P. sent a letter demanding that the Moores comply with the recruiting agreement provision requiring them to give Las Palmas access to the financial books and records. The letter advised that if they failed to comply, Las Palmas would institute legal action. The Moores advise us that they did not refuse to submit to an audit and complain that Las Palmas did not show up on at least two occasions when it was scheduled to appear at the Moores' office for an audit. The Moores also claim that they relied on their office manager, their CPA, and tax attorney Michael Graham to compile the financial information and submit it to Las Palmas.

In October 2007, Las Palmas initiated an arbitration proceeding alleging the Moores had failed to provide requested documents and submit to an audit. The arbitration administrator, the American Health Lawyers Association (AHLA), provided attorneys James and Graham with a list of ten potential arbitrators and their respective *curricula vitae*. The letter asked the parties to rank the individuals, with number one being the most preferred arbitrator, and gave them the opportunity to strike one individual. The individual with the lowest sum would be named as the arbitrator. The

parties submitted their rankings to the AHLA and Penny Hobbs was appointed. On November 12, 2007, Hobbs emailed the following letter to James, Graham, Marian Wu,[1] and Phil T. Dearth:[2]

> I have been appointed arbitrator in the above-referenced matter. I do not believe my participation as the arbitrator would be directly adverse to any interest described in Rule 3.02 of the AHLA Code of Ethics for Arbitrator. Nor do I believe that any disclosure is required under Rule 3.02. However, in the spirit of full disclosure, I advise you that I have represented clients in matters in which Jackson Walker L.L.P. represented clients both adverse to and aligned with my clients. As a result, I am familiar with both Mr. James and Ms. Wu. I do not believe that my familiarity with these lawyers would affect my ability to perform as an arbitrator in this matter. However, in light of this disclosure, if either party objects to my serving as an arbitrator, I would appreciate your notifying me by November 15, 2007, so that I may timely advise AHLA whether I will accept the appointment.

When Hobbs learned that Dearth was no longer associated with Wood, Dearth & Day, she sent the letter to T. Barrett Wood, who had taken over the case when Dearth left the firm. No objections were made to Hobbs serving as arbitrator and she accepted the appointment.

On November 29, 2007, Hobbs ordered the Moores to provide Las Palmas with certain documents by December 14, 2007, and ordered that the audit be completed by January 18, 2008 absent agreement of the parties. When the Moores did not produce the documents as ordered, the audit was rescheduled for January 21, 2008 and it was completed on or around that date. Following receipt of the audit report, Las Palmas amended its arbitration petition to seek recovery of the advances paid to Dr. Debora Moore on the ground she had not worked full-time. It was around this time that Antonio Silva became lead counsel for the Moores.

On July 31, 2008, eleven days before the final arbitration hearing, Silva sent an email to Hobbs objecting to her appointment because she had listed James as a reference on her *curriculum*

---

[1] Wu is also employed by Jackson Walker and is James' co-counsel.

[2] At the time, Dearth was a member of Wood Dearth & Day and he represented the Moores in the arbitration.

*vitae*. Silva found the resume in one of Dearth's files as he was preparing for the arbitration. James pointed out in a responsive email that the Moores and their two prior attorneys had received Hobbs' CV before she was selected. Hobbs responded by email:

> Mr. Silva, Mr. James has already provided you with a copy of the letter I sent on November 12, 2007 to the attorneys representing the Respondents at the time, advising them of my familiarity with Mr. James, Ms. Wu and the law firm of Jackson Walker L.L.P. Mr. Dearth had left the firm by the time I sent the letter, and Mr. Graham advised me the [sic] Mr. T. Barrett Wood had taken over the case. I forwarded the letter to Mr. Wood. No one objected to my accepting the appointment.
>
> After carefully considering the Respondents' request and Claimant's response in accordance with the American Health Lawyers Association Code of Ethics for Arbitrators 3.02b,[3] I have determined not to withdraw because the reason for the challenge is not substantial, I believe I can act and decide the case impartially and fairly, and my withdrawal at this time would cause undue delay and expense to the claimant.

During the final arbitration hearing in August 2008, the Moores alleged for the first time that Graham did not have authority to represent them in the arbitration. Debora Moore testified that she was unaware of the arbitration proceedings until she received a bill from T. Barrett Wood, who she believed had been retained by Graham. Moore knew Graham was assisting with the audit. She called Graham and asked him what right he had to move past the audit. It was not until Graham turned over the file that she learned he had purported to represent them in the arbitration. The Moores then hired Silva to represent them in the arbitration proceeding.

Hobbs issued a written decision on September 12, 2008, finding:

• The Moores breached the recruiting agreement by failing to allow an audit of their books and records;

• Dr. Debora Moore breached the recruiting agreement because she failed to engage in the

---

[3] Rule 3.02b(ii) provides: "If the arbitrator, after carefully considering the matter, determines that the reason for the challenge is not substantial, that the arbitrator can nevertheless act and decide the case impartially and fairly, and that the withdrawal of the arbitrator would cause undue delay or expense to another party or would be contrary to the ends of justice, the arbitrator may continue to serve as an arbitrator."

private practice of medicine as a urologist on a full-time permanent basis;

• Las Palmas breached the recruiting agreements by placing both physicians on call without a weekend off for seven weekends during the term of the recruiting agreements;

• The Moores failed to prove that Las Palmas breached the recruiting agreements by failing to forgive part of the debt owed by them;

• The Moores failed to prove their claim that Las Palmas breached the recruiting agreements by treating them as one doctor in the assignment of operating rooms; and

• The Moores failed to prove that Las Palmas was unjustly enriched by placing them on call for six weekends.

The arbitrator awarded Las Palmas damages: (1) against both doctors in the amount of $23,000 for their failure to allow an audit, and (2) against Dr. Debora Moore in the amount of $915,775 for her failure to work full-time as a urologist. The arbitrator also awarded Las Palmas attorneys' fees in the amount of $139,104. These awards were partially offset by: (1) $438.73 awarded to Dr. Debora Moore for Las Palmas' failure to timely pay her sign-on bonus and advance net collectible revenue; (2) $6,300 awarded to the Moores for Las Palmas' failure to provide them with one weekend a month off call; and (3) $15,818 in attorney's fees for the prosecution of the Moores' counterclaims. The net amount of the award to Las Palmas is $1,055,322.27 together with 5 percent post-judgment interest.

On September 15, 2008, Las Palmas filed a petition to confirm the arbitration award and enter judgment. The Moores filed an answer raising the following affirmative defenses to confirmation: (1) the award was obtained by corruption, fraud, or other undue means; (2) Appellees' rights were prejudiced by the evident partiality of the arbitrator; (3) the arbitrator took on the role of an advocate which constituted willful behavior and/or misconduct; (4) the arbitrator refused to hear material evidence by limiting the testimony of an expert witness; (5) the arbitrator was biased; and (6) the arbitrator failed to strictly construe ambiguities in the recruiting agreements

against Las Palmas. They also filed a counter-petition to have the award vacated on the following grounds: (1) the award was obtained by corruption, fraud, or other undue means; (2) the Moores' rights were prejudiced by the evident partiality of the arbitrator; (3) the arbitrator took on the role of an advocate which constitutes willful behavior and/or misconduct; and (4) the arbitrator refused to hear material evidence by limiting the testimony of an expert witness. At the hearing, the parties introduced the transcript of the arbitration hearing, the evidence from the arbitration proceeding, and the post-arbitration deposition of Arbitrator Hobbs, but did not present any live testimony. The trial court subsequently entered an order denying Las Palmas' motion to confirm, vacating the arbitration award, and directing that the arbitration be reheard by an arbitrator chosen by the parties.

## JURISDICTION

The Moores first challenge our jurisdiction of the appeal because the trial court directed a rehearing. Section 171.098(a) provides:

(a) A party may appeal a judgment or decree entered under this chapter or an order:

(1) denying an application to compel arbitration made under Section 171.021;

(2) granting an application to stay arbitration made under Section 171.023;

(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or

(5) vacating an award without directing a rehearing.

TEX.CIV.PRAC.&REM.CODE ANN. § 171.098(a)(Vernon 2005). In support of their argument, they direct us to *Thrivent Financial for Lutherans v. Brock*, 251 S.W.3d 621, 627-28 (Tex.App.--Houston [1st Dist.] 2007, no pet.) and *Prudential Securities, Inc. v. Vondergoltz*, 14 S.W.3d 329, 330-31 (Tex.App.--Houston [14th Dist.] 2000, no pet.). The Supreme Court has just recently disapproved

of these decisions and held that a district court judgment which denies confirmation of an arbitration award, vacates the award, and directs a rehearing is appealable. *East Texas Salt Water Disposal Company v. Werline*, 307 S.W.3d 267 (Tex. 2010). Accordingly, we deny the request to dismiss the appeal for want of jurisdiction.

## VACATUR OF THE ARBITRATION AWARD

Las Palmas presents two issues in its challenge to the trial court's order. First, it argues that the court erred in finding that the Moores did not waive their right to challenge the arbitration award. Second, it contends that the Moores failed to establish any of the statutory grounds for vacating an arbitration award.

Texas law clearly favors arbitration. *East Texas Salt Water Disposal*, 307 S.W.3d at 271. An arbitration award is given the same effect as a judgment of last resort and all reasonable presumptions are indulged in favor of the award and none against it. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). An arbitration award is conclusive on the parties as to all matters of fact and law because the award has the effect of a judgment of a court of last resort. *Xtria L.L.C. v. International Insurance Alliance Inc.*, 286 S.W.3d 583, 591 (Tex.App.--Texarkana 2009, pet. denied); *Pheng Investments, Inc. v. Rodriguez*, 196 S.W.3d 322, 328 (Tex.App.--Fort Worth 2006, no pet.)(op. on reh'g). Consequently, judicial review of an arbitration award is extraordinarily narrow. *East Texas Salt Water Disposal*, 307 S.W.3d at 271; *Cooper v. Bushong*, 10 S.W.3d 20, 24 (Tex.App.--Austin 1999, pet. denied).

The Texas General Arbitration Act[4] provides for both expeditious and limited review. A trial court reviews an application under the TGAA in the same manner and with the same notice as a motion in a civil case. TEX.CIV.PRAC.&REM.CODE ANN. § 171.093. Section 171.093 is similar to

---

[4] TEX.CIV.PRAC.&REM.CODE ANN. §§ 171.001-171.098 (Vernon 2005)(TGAA).

Section 6 of the Federal Arbitration Act[5] and has the same policy--to expedite judicial treatment of matters pertaining to arbitration. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 430 (Tex.App.--Dallas 2004, pet. denied), *citing World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365-66 (2nd Cir. 1965). Under the TGAA, the reviewing court is authorized to confirm, vacate, or modify an arbitration award, but the matters which can be reviewed are quite limited. TEX.CIV.PRAC.&REM. CODE ANN. §§ 171.082, 171.086(b)(6), 171.087, 171.088. Judicial review is limited because it adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes. *See CVN Group, Inc.*, 95 S.W.3d at 238; *Crossmark*, 124 S.W.3d at 429.

Section 171.087 of the TGAA requires that an arbitration award be confirmed on the application of a party unless grounds are offered for vacating, modifying, or correcting the award under Sections 171.088 or 171.091. TEX.CIV.PRAC.&REM.CODE ANN. § 171.087. Pursuant to Section 171.088, a court may vacate an arbitration award in only four circumstances: (1) the award was obtained by fraud, corruption, or other undue means; (2) the rights of a party was prejudiced by evident partiality, corruption, or willful misconduct by the arbitrator; (3) the arbitrator exceeded its power, refused to postpone the hearing on good cause shown, or refused to hear evidence material to the controversy; or (4) there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection. TEX.CIV.PRAC.&REM.CODE ANN. § 171.088(a). The statutory grounds for vacatur reflect severe departures from an otherwise proper arbitration process and are of a completely different character than ordinary legal error. *Quinn v. Nafta Traders, Inc.*, 257

---

[5]  9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.").

S.W.3d 795, 798 (Tex.App.--Dallas 2008, pet. granted).  Indeed, a reviewing court is not authorized to set aside an arbitration award for a mere mistake of fact or law.  *Crossmark*, 124 S.W.3d at 429; *Cooper*, 10 S.W.3d at 24; *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.--Houston [14th Dist.] 1995, no writ).

The Moores based their petition to vacate on multiple grounds under Section 171.088 and the trial court did not specify the ground or grounds on which it based its decision.  Therefore, we must review all of the grounds to determine if any one of them supports the trial court's decision.

*Standard of Review*

The parties disagree as to the correct appellate standard of review.  Las Palmas suggests that we should review the trial court's ruling *de novo* because the operative facts are undisputed and a legal question exists as to whether the Moores established any grounds to vacate the award.  The Moores advocate a legal sufficiency standard because the trial court conducted an evidentiary hearing on the competing petitions to confirm and vacate the arbitration award.

Intermediate appellate courts in Texas have utilized different standards of review for vacation, modification, or confirmation of an arbitration award.  Without citing any authority, the San Antonio Court of Appeals has employed an abuse of discretion standard of review.  *Koch v. Koch*, 27 S.W.3d 93, 95 (Tex.App.--San Antonio 2000, no pet.).  The Austin Court of Appeals has applied traditional sufficiency-of-the-evidence review to an order vacating an arbitration award based on evident partiality where the trial court had conducted a bench trial on the issue.  *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 802-03 (Tex.App.--Austin 2004, pet. denied).  In some cases, one or both of the parties filed summary judgment motions and the appellate courts employed the applicable summary judgment standard of review.  *See Mariner Financial Group, Inc. v. Bossley*, 79 S.W.3d 30, 34 (Tex. 2002); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 804 (Tex.App.--Dallas

2008, pet. denied); *Crossmark*, 124 S.W.3d at 430.

In rejecting the argument in *Werline* that the standard of review is abuse of discretion, the Texarkana Court of Appeals noted that numerous cases utilized a *de novo* review for vacation, modification, or confirmation of an arbitration award. *Werline v. East Texas Salt Water Disposal Company*, 209 S.W.3d 888, 897 (Tex.App.--Texarkana 2006), *affirmed by East Texas Salt Water Disposal Company v. Werline*, 307 S.W.3d 267 (Tex. 2010); *see e.g., In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex.App.--Dallas 2009, pet. denied); *Hisaw & Associates General Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex.App.--Fort Worth 2003, pet. denied); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex.App.--Houston [14th Dist.] 2003, pet. denied); *Thomas James Associates, Inc. v. Owens*, 1 S.W.3d 315, 320 (Tex.App.--Dallas 1999, no pet.); *International Bank of Commerce-Brownsville v. International Energy Development Corp.*, 981 S.W.2d 38, 43 (Tex.App.--Corpus Christi 1998, pet. denied). And as noted by Las Palmas, appellate courts have engaged in *de novo* review even where the issue involved an allegation of evident partiality or misconduct by the arbitrator. *See Thomas James Associates, Inc. v. Owens*, 1 S.W.3d 315, 320 (Tex.App.--Dallas 1999, no pet.); *Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 639 (Tex.App.--Waco 2003, no pet.).

The Moores counter that *de novo* review is inapplicable to a trial court finding of arbitrator bias, partiality, or misconduct rendered after an evidentiary hearing because fact questions exist. The "evident partiality" analysis is necessarily fact-intensive. *Mariner Financial Group, Inc. v. Bossley*, 79 S.W.3d 30, 34 (Tex. 2002). Citing *Kendall Builders v. Chesson*, the Moores reason that we may only review the sufficiency of the evidence to support the trial court's finding because an appellate court must defer to the factfinder's determinations of fact.

We turn first to the United States Supreme Court's decision in *First Options of Chicago, Inc.*

*v. Kaplan*, 514 U.S. 938, 947, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). The opinion is instructive although the court was addressing the standard of review to be applied by an appellate court reviewing a federal district court's decision confirming an arbitration award under the FAA. In *First Options*, the Supreme Court rejected application of an abuse of discretion standard to an order confirming an arbitration award under the FAA. *Id.* It cited with approval the following standard utilized at the time by the majority of the circuits: the reviewing court accepts findings of fact that are not "clearly erroneous" but decides questions of law *de novo. Id.* (noting that the Third Circuit sometimes referred to this as *de novo* review). Federal courts have applied the *First Options* standard to orders confirming or vacating arbitration awards. *See e.g., Local 97, International Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008); *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 364 (5th Cir. 2003); *Electronic Data Systems Corporation v. Donelson*, 473 F.3d 684, 688-89 (6th Cir. 2007); *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692 (7th Cir. 2004); *McGrann v. First Albany Corporation*, 424 F.3d 743, 748 (8th Cir. 2005); *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1172 (9th Cir. 2010); *Youngs v. American Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008);*Gianelli Money Purchase Plan and Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309, 1310-11 (11th Cir. 1998).

In true *de novo* appellate review, the appellate court exercises its own judgment and redetermines each issue of fact and law, giving no deference to the trial court's decisions. *See Harris v. Archer*, 134 S.W.3d 411, 437 (Tex.App.--Amarillo 2004, pet. denied), *citing Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). The standard of review approved by the United States Supreme Court is not true *de novo*, but is comparable to the standard by which Texas appellate courts review factual findings for legal and factual sufficiency, and review legal conclusions *de novo*.

*See Harris*, 134 S.W.3d at 436, *citing BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)(adopting latter standard of review for review of decision denying a special appearance where trial court enters findings of fact and conclusions of law).[6]

We agree with the *Werline* court that abuse of discretion is not the proper standard. Legal issues must be reviewed *de novo*. But when a trial court undertakes to resolve fact disputes in the context of a claim of evident partiality or misconduct, the trial court's fact findings must be reviewed for legal and factual sufficiency while its legal conclusions will be reviewed *de novo*. Consequently, the standard of review we will employ depends on whether the trial court resolved any factual issues.

In the trial court, the parties introduced the record of the arbitration, including the exhibits and a transcription of the arbitration hearing. Las Palmas also introduced Hobbs' post-arbitration deposition regarding the participation of Graham and Wood in pretrial telephonic conferences as counsel for the Moores. Hobbs' testimony is relevant only to Las Palmas's waiver defense. Attorneys for both sides presented argument but the Moores characterize it as unsworn testimony and rely on Silva's "testimony" on appeal. Over Las Palmas' hearsay objection, Silva opined that the arbitrator was biased against the Moores based on events which occurred during the arbitration hearing.

Normally, an attorney's statements must be under oath to be considered evidence. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). The party opponent can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary. *Id.* In *Banda*, the Supreme Court held that an attorney's unsworn statements regarding the existence and

---

[6] *Harris* is not an arbitration case and does not cite *First Option*, but the court of appeals discussed the same standard of review in the context of appellate review of a claim that exemplary damages are constitutionally excessive. *Harris*, 134 S.W.3d at 436-37, *citing State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 1519-20, 155 L.Ed.2d 585 (2003) and *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 435-37, 121 S.Ct. 1678, 1685-86, 149 L.Ed.2d 674 (2001).

terms of an oral settlement agreement constituted evidence because the opponent did not object. The court found it significant that the attorney referred to her statements as testimony in her capacity as an officer of the court and she clearly placed opposing counsel on notice that she was attempting to prove the existence and terms of the oral agreement. *Id.* The court found that the opposing party waived any objection to the unsworn testimony such that it constituted some evidence of the settlement agreement. *Id.*

Las Palmas' hearsay objection does not preserve any complaint about Silva's unsworn testimony. *See* TEX.R.APP.P. 33.1(a). Even so, we question whether an attorney's opinion about matters appearing in the record would fall within the parameters of *Banda*. The attorneys here discussed the evidence from the arbitration hearing while arguing their respective positions. The Moores have not cited any authority which would support treating counsel's argument as evidence. We conclude that it was not.

We agree with Las Palmas that the operative facts pertaining to Hobbs' alleged evident partiality and misconduct are undisputed and are found in the record of the arbitration hearing. Consequently, the trial court made no factual determinations which would be entitled to deference. The only issue before us is whether the trial court made the correct legal conclusion on these facts. That is a question of law which we review *de novo*.

*Corruption, Fraud, or Other Undue Means*

We first consider whether the Moores established any of the statutory grounds for vacating an arbitration award. If not, it will be unnecessary to address the affirmative defenses.

The Moores alleged that the arbitration award should be vacated pursuant to Section 171.088(a)(1) because it was obtained by corruption, fraud, or other undue means. To establish this ground, they complained in the trial court that Hobbs failed to disclose that James was a reference

on her resume.

To vacate an arbitration award because of fraud, the movant must establish: (1) fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and (3) the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration. *Henry v. Halliburton Energy Services, Inc.*, 100 S.W.3d 505, 510 (Tex.App.--Dallas 2003, pet. denied). The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *Formosa Plastics Corporation USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Fraud by nondisclosure is a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts. *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Pursuant to Rule 3.02 of the AHLA ADR Service's Code of Ethics, an arbitrator has the following duty:

> a. An arbitrator shall refrain from accepting employment or continuing as an arbitrator in any dispute if the arbitrator reasonably believes or perceives that the arbitrator's participation as an arbitrator would be directly adverse to any interest of the arbitrator, an affiliate of the arbitrator or a person with whom the arbitrator has a client or other substantial relationship. The arbitrator must also disclose to the parties any other interest of the arbitrator, an affiliate of the arbitrator or a person with whom the arbitrator has a client or other substantial relationship which may materially limit the arbitrator's ability to perform the arbitrator's responsibilities as the arbitrator. This disclosure requirement continues throughout the arbitration process and shall include any pertinent information known or made available to the arbitrator regarding the prior use by either party of the arbitrator or dispute resolver from the American Health Lawyers Association Alternative Dispute Resolution Service. After appropriate disclosure of an interest other than a directly adverse

interest, the arbitrator may serve if all parties consent.

Additionally, Rule 2.05 of the AHLA rules of Procedure for Arbitration requires an arbitrator to disclose "any circumstance likely to affect impartiality, including a bias or a financial or personal interest in the result of the arbitration or a past or present relationship with a party or a party's counsel or other authorized representative in accordance with the Code of Ethics for Arbitrators."

The undisputed evidence established that Hobbs disclosed to Graham and Wood her professional relationship with James, Wu, and the Jackson Walker law firm. She gave them an opportunity to object to her appointment. When she did not receive an objection, Hobbs accepted the appointment. Eleven days before the arbitration hearing, Silva sent Hobbs an email objecting because she had failed to disclose to him or to the Moores that James was listed as a reference on her resume. Hobbs responded that she had disclosed the relationship to the Moores' former attorneys and they had not objected. The Moores did not raise the issue again until the arbitration hearing when they testified that Graham had exceeded his authority by purporting to represent them in the arbitration and by retaining Wood to represent them. During final argument, Silva maintained that Graham did not have authority to select Hobbs as the arbitrator, but he did not request that Hobbs withdraw.

The Moores have failed to establish by clear and convincing evidence that the alleged fraud by nondisclosure was not discoverable prior to or during the arbitration. To the contrary, the record shows that they discovered the information prior to the final arbitration hearing. Hobbs considered their request that she withdraw, but she denied it pursuant to Rule 3.02b(ii) because she found that the reason for the challenge was not substantial, she believed she could act and decide the case impartially and fairly, and her withdrawal would cause undue delay and expense to Las Palmas.

The Texas Arbitration Act does not define "undue means" and we have found only one case

discussing the meaning of the phrase under the TAA. In *IPCO, Inc. v. A.B. Chance Co.*, 65 S.W.3d 252 (Tex.App.--Houston [1st Dist.] 2001, pet. denied), the arbitrator engaged in an *ex parte* communication with IPCO's counsel after the arbitration hearing but before issuance of the arbitration award. After the arbitrator announced the award, IPCO argued that the award should be vacated because it had been procured by "undue means" as a result of improper conduct by the arbitrator. IPCO asserted the arbitrator had used information learned during the *ex parte* communication against IPCO. The court of appeals observed it had found no Texas cases which defined what conduct by an arbitrator falls into the category of "other undue means," as that term is used in Section 171.088. *Id.* at 257-58. It is unclear from the opinion, but it appears IPCO also argued that the *ex parte* communication constituted the type of misconduct which would support vacating an arbitration award under the common law. To constitute "misconduct" justifying vacation of an arbitration award under Texas common law, an act must so affect the rights of a party as to deprive it of a fair hearing. *Id.* at 258. The court of appeals rejected IPCO's argument because "misconduct" does not include receiving *ex parte* affidavit testimony, but refers only to acts evincing unfairness or contrary to all the principles of a just proceeding. *Id., citing Mullinax, Wells, Baab & Cloutman, P.C. v. Sage*, 692 S.W.2d 533, 536 (Tex.App.--Dallas 1985, writ ref'd n.r.e.).

Because the Federal Arbitration Act uses almost identical language[7] as Section 171.088(a)(1), it is helpful to look to cases considering the issue under the FAA. A mere mistake of law of law is insufficient to vacate an arbitration award on the basis of "undue means." *LeFoumba v. Legend Classic Homes, Ltd.,* No. 14-08-00243-CV, 2009 WL 3109875, at *2 (Tex.App.--Houston [14th

---

[7] 9 U.S.C.A. § 10(a)(1)(West 2009)(providing for vacation of arbitration award where the award was procured by corruption, fraud, or undue means).

Dist.] 2009, no pet.)(not designated for publication); *Jamison & Harris v. National Loan Investors*, 939 S.W.2d 735, 737 (Tex.App.--Houston [14th Dist.] 1997, writ denied). Instead, a party who seeks to vacate an award allegedly procured by "undue means" must show immoral, illegal, or bad-faith conduct. *LeFoumba*, 2009 WL 3109875 at \*2; *In re Arbitration Between Trans Chemical Ltd. and China National Machinery Import & Export. Corp.*, 978 F.Supp. 266, 304 (S.D.Tex. 1997), *citing A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403-04 (9th Cir. 1992). The record does not contain any evidence which would support a conclusion that the arbitrator acted immorally, illegally, or in bad faith.

The Texas Arbitration Act likewise does not define corruption as it is used in Section 171.088(a)(1). Corruption is defined as "the state of being corrupt; a perversion of integrity; bribery" and corrupt is defined as "guilty of dishonest practices, as bribery; lacking integrity; crooked: a corrupt judge." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 454, 455 (2003). There were no factual allegations made nor evidence presented to support vacating the award based on corruption. For all of these reasons, the trial court erred by impliedly vacating the arbitration award pursuant to Section 171.088(a)(1).

*Evident Partiality by Non-Disclosure*

The Moores also alleged that the arbitration award should be vacated pursuant to Section 171.088(a)(2)(A) because their rights were prejudiced by the evident partiality of Arbitrator Hobbs. In the motion to vacate, they alleged that Hobbs failed to disclose that James was listed as a reference on her resume and failed to disclose her "close personal relationship" with him. On appeal, they argue more broadly that Hobbs failed to disclose the nature and full extent of her relationship with Las Palmas' counsel.

Under the Texas Arbitration Act, an arbitration award must be vacated if a party's rights

were prejudiced by evident partiality by a neutral arbitrator. TEX.CIV.PRAC.&REM.CODE ANN. § 171.088(a)(2)(A). A neutral arbitrator selected by the parties exhibits evident partiality if the arbitrator does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *Burlington Northern Railroad Co. v. TUCO Inc.*, 960 S.W.2d 629, 636-37 (Tex. 1997). This evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias. *Id*. at 636. A potential arbitrator's required disclosures are not limited to direct financial or business relationships. *Id.* at 637. Under the *TUCO* standard, "parties should have access to all information that might reasonably affect the potential arbitrator's impartiality" but a neutral arbitrator is not required to disclose relationships or connections that are trivial. *Id*. at 637.

The Moores fault Hobbs for not disclosing "whether Mr. James has been asked to serve as a reference after being listed on her resume; whether he has in fact served as such a reference; what information he provided in response to inquiries based on that listing; whether and to what extent she obtained any income as a result of his actions as a reference; how she has been compensated for that work; and the extent to which she anticipates or hopes that she may receive income in the future by listing Mr. James as a reference." They also argue that "[t]he fact that Mr. James is listed as a reference on the arbitrator's resume creates a substantial reason to believe that she either benefitted financially from listing him as a reference, or hopes to do so in the future." The Moores had the burden to prove evident partiality yet they presented no evidence in the trial court establishing the existence of any of these facts. In fact, they did not even make these allegations in the trial court.[8]

---

[8] The Moores based their entire argument in the trial court on Hobbs' failure to disclose that she had listed James as a reference on her CV. They alleged that Hobbs must have a close personal relationship with James. It is undisputed that AHLA, as part of the arbitrator selection process, provided counsel for both sides with the CV of each potential arbitrator--including Hobbs--prior to the selection of an arbitrator.

In the absence of any evidence, we cannot conclude that Hobbs is evidently partial due to a failure to disclose.

The Moores acknowledge that Hobbs' November 12 letter stated she had represented clients in matters in which Jackson Walker represented clients adverse to and aligned with her clients and that she is therefore familiar with Las Palmas' counsel. But the doctors insist that Hobbs should have disclosed what those cases were; the nature of the cases; whether she was co-counsel with James and Wu; when the representation occurred, whether the representation was in the past or continued at the time of her letter; whether she was paid by the same client that paid James and Wu; the extent to which either she or Las Palmas' attorneys had any financial interest in the litigation creating a financial interest in the services performed by the other; whether she referred the clients in those cases to James or Wu, whether they referred the clients to her; or whether referral fees were exchanged between them. Again, the Moores have not presented any evidence regarding these matters. Hobbs disclosed her professional relationship and familiarity with Las Palmas' attorneys. If they had any additional questions about the relationship, they could have asked Hobbs before accepting her, or they could have objected to her appointment when they were given the opportunity to do so. The Moores also complain that Hobbs denied their motion to withdraw without an evidentiary hearing and deprived them of the opportunity to discover additional facts about the relationship. But they did not request a hearing on the motion nor did they object when Hobbs denied the motion without a hearing. Nothing prevented them from investigating the nature of the relationship or presenting evidence in the trial court in support of their motion to vacate on this ground. For all of these reasons, the trial court erred by impliedly finding that Hobbs exhibited evident partiality by failing to fully disclose her relationship with counsel opposite.

*Actual Bias at the Arbitration Hearing*

The Moores also sought to vacate the award on the ground that Hobbs exhibited actual bias at the arbitration hearing. They allege that Hobbs was hostile to them and their attorney throughout the hearing, she gave Las Palmas' counsel wide latitude while restricting their attorney, she cross-examined them, and her rulings on evidentiary matters were unbalanced.

Las Palmas replies that evident partiality under Section 171.088(a)(2)(A) is limited to non-disclosure and does not include actual bias. Federal courts reviewing claims of evident partiality under Section 10(a)(2) of the FAA[9] hold that a party can establish evident partiality by demonstrating that the arbitrator displayed actual bias at the arbitration proceeding. *See Weber v. Merrill Lynch Pierce Fenner and Smith, Inc.*, 455 F.Supp.2d 545, 549 (N.D. Tex. 2006), *citing Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998) and *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). Given the similarity between Section 10(a)(2) of the FAA and Section 171.088(a)(2)(A) of the TGAA, we conclude that evident partiality can be established through a showing of actual bias.

The Texas Supreme Court has not provided guidance as to the standard to be applied when reviewing a claim of evident partiality based on actual bias during the arbitration proceedings. The Moores urge that we adopt the "reasonable impression of partiality" standard utilized by the Fourteenth Court of Appeals in *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 233-34 (Tex.App.--Houston [14th Dist.] 1993, writ denied). There, Babcock & Wilcox alleged evident partiality based on the arbitrator's conduct during arbitration where an independent appraiser offered future services to both parties and PMAC indicated it would consider the offer. The court of appeals stated that a party seeking to vacate an award on the basis of evident partiality under Section 10 of

_____

[9] Section 10(a)(2) authorizes a court to vacate an arbitration award where there was evident partiality or corruption in the arbitrators. 9 U.S.C.A. § 10(a)(2).

the FAA must prove the existence of facts which would establish a reasonable impression of the arbitrator's partiality to one party. *Id.* The majority of federal courts have rejected "appearance of bias" as the relevant standard when actual bias is alleged. *See, e.g., Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994)(holding that in actual bias case, as opposed to non-disclosure case, court must find actual bias); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir.1994), *aff'd*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990); *Morelite Constr. Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 82-84 (2d Cir. 1984); *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551 (2d Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). The reviewing court instead decides this question using an objective standard to determine whether the movant has shown actual bias. *Weber*, 455 F.Supp.2d at 550. The parties asserting actual bias have the burden of proof. *Id.* (characterizing the burden of proof as onerous). They must establish that a reasonable person would have to conclude that the arbitrator was partial to one party, and they must do so by producing specific facts. *Id.*, *citing Morelite Construction Corporation v. N.Y. City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984). We conclude that the objective standard is better suited for determining claims of actual bias.

We have reviewed the entire record of the arbitration hearing and find no evidence from which a reasonable person would have to conclude that Hobbs was partial to Las Palmas. At the risk of stating the obvious, the issues were hotly contested by the parties. Rather than treating the Moores with hostility, the record of the arbitration hearing reflects that Hobbs treated the parties and their attorneys fairly and with respect throughout the proceedings, even when the witnesses and the

attorneys tried her patience. She ruled on the issues and objections put before her, sometimes ruling in favor of Las Palmas and sometimes in favor of the Moores. She awarded a directed verdict on one of the Moores' counterclaims and awarded them over $20,000 plus attorney's fees. The Moores particularly complain that Hobbs cross-examined them and acted as an advocate for Las Palmas. Hobbs did ask them a number of questions during the hearing, but we are unaware of any authority prohibiting an arbitrator from asking questions. Hobbs apparently felt it was necessary to address the Moores' claims that Graham was not authorized to represent them in the arbitration, a claim which had not previously been urged. Because the arbitration record does not support a claim of actual bias, the trial court erred by impliedly vacating the arbitration award on this ground.

*Misconduct*

The Moores also sought to have the arbitration award vacated on the ground that Hobbs' conduct at the arbitration hearing amounted to misconduct. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 171.088(a)(2)(C). An arbitration award can be vacated based on misconduct only if the conduct so affects the rights of the party that it may be said to deprive him of a fair hearing. *GJR Management Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex.App.--San Antonio 2003, pet. denied); *Mullinax, Wells, Baab, & Cloutman, P.C. v. Sage*, 692 S.W.2d 533, 536 (Tex.App.-- Dallas 1985, writ ref'd n.r.e.). Only in extreme cases will a court vacate an award because of misconduct. *GJR Management*, 126 S.W.3d at 263. The record of the arbitration hearing does not reflect that the arbitrator committed the type of misconduct which would warrant vacating the arbitration award. The trial court erred by impliedly vacating the arbitration award on this ground.

*Refusal to Hear Material Evidence*

The Moores also requested that the trial court vacate the arbitration hearing on the ground that Hobbs refused to hear material evidence by limiting the testimony of their expert witness, Robert Torres. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 171.088(a)(3)(C). To vacate an arbitration award based on evidentiary error, the error must be one that is not simply an error of law but which so affects the rights of a party that it may be said he was deprived of a fair hearing. *Babcock & Wilcox*, 863 S.W.2d at 234, *citing Forsythe International, S.A. v. Gibbs Oil Company of Texas*, 915 F.2d 1017, 1023 (5th Cir. 1990). The Moores' designation of Torres, a certified public accountant, indicated he would provide an opinion regarding the audit report. Las Palmas deposed Torres less than two weeks before the arbitration hearing began and Torres indicated he would base his opinion only on the audit report and supporting data. During the arbitration hearing, Torres testified he had spoken with local physicians about the types of contracts they had with Hospital Corporation of America, with which Las Palmas is affiliated. After determining that Torres had spoken with these individuals since the deposition, Las Palmas objected to the testimony. Torres testified on voir dire that he could limit his opinion to what he knew at the time of the deposition. He proceeded to offer his opinion about the audit report.

The record does not reflect the substance of the testimony Torres would have offered if Las Palmas' objection had not been sustained. Consequently, the Moores have not shown that the limitation, even if erroneous, deprived them of a fair hearing. This ground does not support the trial court's order vacating the arbitration award.

*Arbitrator's Construction of the Agreements*

Finally, the Moores sought to have the arbitration award vacated on the ground that Hobbs failed to strictly construe ambiguities in the recruiting agreements against Las Palmas. The grounds

for vacating an arbitration award are narrow and do not authorize the trial court to vacate an arbitration award based on a mistake of fact or law in the application of substantive law. *See Pheng*, 196 S.W.3d at 328; *J.J. Gregory Gourmet Services, Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex.App.--Houston [1st Dist.] 1995, no writ); *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.--Houston [14th Dist.] 1995, no writ). The trial court erred by impliedly vacating the arbitration award on this ground.

Because none of the grounds alleged by the Moores has merit, the trial court was required to confirm the arbitration award. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 171.087. We sustain Issue Two, reverse the trial court's order, and render judgment confirming the arbitration award. Our resolution of Issue Two makes it unnecessary to consider Issue One.


October 6, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Bramblett, Judge
Bramblett, Judge, sitting by assignment