Opinion issued May 19, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00059-CV

———————————

Thomas E. Swonke, Appellant

V.

Patrick L.
Swonke, Appellee



 



 

On Appeal from the 280th District Court

Harris County, Texas



Trial Court Case No. 2008-30871

 



 

MEMORANDUM OPINION
ON REHEARING

Appellant,
Thomas E. Swonke, has filed a motion for en banc reconsideration of this
Court’s April 21, 2011 opinion.  In light
of the motion, we withdraw our opinion and judgment of April 21, 2011 and issue
this opinion in its stead.  We overrule
the motion for reconsideration en banc as moot.  See
Brookshire Brothers,
Inc. v. Smith, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied) (op. on reh’g) (noting that motion for en banc
reconsideration becomes moot when panel issues new opinion and judgment).

Appellant, Thomas E. Swonke, challenges the trial court’s
judgment in favor of appellee, Patrick L. Swonke, denying Thomas’s application
for a court order suspending arbitration, disqualifying an arbitrator, and
setting aside any action by the arbitrator. 
In a single issue, Thomas contends that the evidence is legally and
factually insufficient to support the trial court’s implied finding that the
arbitrator should not be disqualified for “evident partiality.”[1]

We affirm.

Background

Thomas and
Patrick Swonke, who are brothers, jointly ran a dental practice through an
entity named “SLSS, LLC.”  After the
brothers had decided to separate their practices, they were unable to agree
regarding the distribution of income and expenses from SLSS.  Patrick sued Thomas, asserting that the
income and expenses had not been allocated according to their oral agreement.  Ultimately, in lieu of pursuing his lawsuit,
Patrick agreed to arbitrate the dispute. 
Thomas and another brother, Terry Swonke, proposed to Patrick that the
arbitrator be James Roberston, who had eighteen years of experience brokering
dental practices.  Patrick knew about
Robertson, but he had had no prior “business dealings” with him before the
brothers agreed on him as their arbitrator. 


As a part of the negotiation of
their arbitration agreement, the brothers contemplated that Robertson would
provide “transition services” for the potential sale of either brother’s
portion of SLSS to the other or to a third party.  On January 22, 2007, Robertson sent to
Patrick and Thomas an “engagement of services” letter, in which he stated,
“Thank you for selecting me to provide arbitration and transition services” and
“the standard fees for the transition of a dental practice through a Buy/Sell
is ten per cent for the seller and $6,000.00 for the buyer.”  Patrick signed his agreement to the terms of
Robertson’s engagement as a broker.

On March
22, 2007, Thomas signed the separate Arbitration Agreement (the “Agreement”),
which provided that Robertson, who had “no other or prior business or other
relationship of any kind” with either brother or their attorneys, would be the
arbitrator.  The brothers would “forego a
trial” of Patrick’s claims against Thomas and submit to binding arbitration the
issue of “the proper balancing of accounts between [Patrick] and [Thomas]
related to their combined dental practice based on their prior agreements as to
the manner in which income and expenses would be allocated.”  The Agreement did not include a provision
regarding transition or brokerage services.  


On April 3,
2007, Robertson sent to Thomas an “engagement of services” letter (the
“Engagement Letter”), in which he stated, “Thank you for selecting me to
provide arbitration and transition services” and “the standard fees for the
transition of a dental practice through a Buy/Sell is ten per cent for the
seller and $6,000.00 for the buyer.  These
fees would apply should either doctor choose to buy or sell their practice or a
portion thereof as a part of a buyout of the other party or to a third
party.”  Thomas signed the Engagement
Letter, indicating his agreement to Robertson’s engagement as a broker.

In December
2007, Robertson brokered Patrick’s “equity” portion of SLSS to a third party
for a maximum sales price of $139,000. 
Patrick was to “earn” the sales price by receiving monthly fifty percent
of the revenue that he generated for the third party for twelve months after
the sale.  The terms of sale provided
Patrick an initial $39,000 “production payment,” but he had to earn the payment
by monthly crediting towards the “production payment” thirty-five percent of
the revenue that he generated until the amount was reduced to zero.  The remaining fifteen percent of his revenue
would be credited towards the outstanding $100,000 of the sales price.  After the $39,000 “production payment” was
reduced to zero, the full fifty percent of the revenue that Patrick generated
would be credited towards the sales price until it reached $139,000 or twelve
months had elapsed.  Patrick, as the
seller, agreed to pay to Robertson his ten percent broker’s fee not as a lump
sum but on a “contingency” basis, i.e., based on the final sales price that the
third party actually paid using the above calculation.  At a maximum, Robertson’s broker’s fee would
be $13,900.

In February
2008, Robertson informed Thomas of the actual sale of Patrick’s portion of SLSS
and that he was preparing to make a ruling in the arbitration, which would
likely go against Thomas.  Thomas
immediately responded with a letter requesting that Robertson withdraw as
arbitrator because, by brokering Patrick’s practice to a third party, he had
“engaged in a previously undisclosed separate business relationship and
transaction with [Patrick], after undertaking to be arbitrator in this
matter.”  Robertson refused to withdraw. 

On March 9,
2008, Robertson sent Thomas a letter informing Thomas that he was prepared to
include in his findings a judgment against Thomas in the amount of $100,000
because Thomas had claimed the “corporate asset” telephone number of SLSS as a
“personal asset” and had been using it for ninety days for his sole
benefit.  He stated that Thomas could
avoid the finding by transferring the phone number to Patrick’s control for
ninety days and then utilizing it as a “neutral asset” for the benefit of both
brothers after that time.  Thomas
released the telephone number to Patrick and wrote several more letters
objecting to Robertson’s continued service as arbitrator.  

On May 20, 2008, Thomas filed with
the trial court a motion entitled, “Order Suspending Arbitration and/or
Disqualifying Arbitrator and to Set Aside Any Action by the Arbitrator.”
 Thomas alleged that Robertson should be
removed for his “evident partiality and bias” because Robertson, while serving
as a neutral arbitrator in the brothers’ dispute, engaged in a “previously
undisclosed” “separate brokerage or other business transaction” with Patrick
and then refused to disclose to Thomas the detail of the brokerage fee paid by
Patrick to Robertson.  During discovery,
Robertson disclosed that his brokerage fee was to be paid by Patrick based on
the amount of dental services revenue that Patrick generated for the third party
in the year after the sale.

On October 29, 2008, Robertson
issued his findings and awards in the arbitration.  He determined that Thomas owed Patrick
$117,590.00 to correct an “imbalance in the accounts” of SLSS.  He further assessed punitive damages against
Thomas in the amount of $161,180.00 because “the amount owed of $117,590.00 or
even a portion thereof should have been paid without requiring [Patrick] to
resort to the courts.”

The trial court heard Thomas’s
application on January 8, 2009.  Thomas
testified that during the arbitration, Robertson had repeatedly inquired as to
whether Thomas would purchase Patrick’s portion of SLSS.  He denied that Robertson “ever disclosed”
before February 2008 that he might broker Patrick’s portion of SLSS to a third
party.  Thomas admitted that Robertson
“would be providing brokerage services,” but explained that “the only sale that
was ever discussed was a sale” between the brothers.  Thomas agreed that, at a meeting in February
2008, Robertson informed him that Patrick’s portion of SLSS had been sold to a
third party and Robertson was “ready to issue an award.”  

Robertson testified that he thought
that the best solution to the brothers’ dispute was for Thomas to purchase
Patrick’s portion of SLSS, but Thomas refused. 
Robertson explained that he had made Thomas aware “from the very
beginning” and “multiple times” during the arbitration that sale to a third
party was an option.  In June 2007,
Robertson first apprised Thomas of an “interested third party.”  Thomas never objected to Robertson’s
negotiating with a third party for the sale of Patrick’s portion of SLSS.  A few days before the sale to the third
party, Robertson called Thomas to tell him the sale to the third party was
“moving forward” and offered Thomas one last opportunity to buy Patrick’s
portion of SLSS.  Thomas again
refused.  Robertson admitted that he
initially refused to disclose the terms of the sale to Thomas, explaining that
the terms were “privileged and confidential” to the buyer.

The trial court orally found that 

[T]he
Agreement allowed the arbitrator to do exactly what he did.  That may be a little unusual but it’s
nevertheless the agreement they made. 
The [A]greement . . . allowed [Robertson] to be a broker in the . . .
matter to sell the practice of either doctor and that it would go without
saying that he was going to get a fee for that. 
In fact, I think somewhere in there even says how the fee will be
figured. . . . [The trial court does] not believe that [Thomas] did not know
that [Robertson] was acting . . . as a broker for [Patrick] at the same time
that he was acting as an arbitrator. 
[The trial court believes] that [Thomas] did know. . . [but] did not
necessarily know exactly who the buyer was 
. . . [and] the arbitrator did not disclose the sale or the amount of
the broker’s fee that he would get, but [the trial court does] not consider
those to be facts that anybody has to have in this particular case since they’re
all agreeing to this unusual situation where they’re allowing [Robertson] to be
a broker and an arbitrator at the same time. . . . [The trial court does] not
believe that [evident partiality has been established] . . . [or] that
[Robertson] was partial or biased or that partiality or bias has been shown.

 

The trial court then entered its order denying
Thomas’s application, but the order did not include the trial court’s oral
recitals.

Evident Partiality

In his sole issue, Thomas argues that
the evidence is legally and factually insufficient to support the trial court’s
implied finding that Robertson “should not be disqualified for ‘evident
partiality’” because Robertson “failed to disclose that during the pendency of
the arbitration, [he] brokered the sale of [Patrick’s] dental practice and
retained as a brokerage fee a financial interest in the success of [Patrick’s]
practice.”  He further argues that he did
not waive his evident partiality objection because he objected to Robertson’s
continuing to serve as arbitrator right after Robertson disclosed that he had
sold Patrick’s portion of SLSS to a third party and Robertson had not yet
disclosed the terms of the sale until after Thomas had filed his application to
disqualify Robertson.  Thomas requests that
we “reverse the trial court’s judgment and (1) render judgment that Robertson
is disqualified from serving as arbitrator and (2) vacate any order or award
issued by Robertson.”  

A court shall, on application of a
party, “vacate an [arbitration] award if . . . 
the rights of a party were prejudiced by . . . evident partiality by an
arbitrator appointed as a neutral arbitrator . . . .” [2]  Tex.
Civ. Prac & Rem. Code Ann. § 171.088(a)(2)(A) (Vernon 2005).  Determining “evident partiality” is a fact
intensive inquiry, dependent on the particular facts of each case.  Mariner
Fin. Group, Inc. v. Bossley, 79 S.W.3d 30, 32 (Tex. 2002).  “When a trial court undertakes to resolve
fact disputes in the context of a claim of evident partiality or misconduct,
the trial court’s fact findings must be reviewed for legal and factual
sufficiency while its legal conclusions will be reviewed de novo.”  Las
Palmas Med. Ctr. v. Moore, No. 08-09-00226-CV, 2010 WL 3896501, at *7 (Tex.
App.—El Paso Oct. 6, 2010, pet. ref’d).

A neutral arbitrator, selected by the
parties or their representatives, exhibits evident partiality if he “does not
disclose facts which might, to an objective observer, create a reasonable
impression of the arbitrator’s partiality.”  Burlington
N. R.R. Co. v. TUCO, 960 S.W.2d 629, 630 (Tex. 1997).  Evident partiality is established from the
nondisclosure itself, regardless of whether the nondisclosed information
necessarily establishes partiality or bias.  Id. at
636.  This test is objective, and the
consequences for nondisclosure are directly tied to the materiality of the
undisclosed information.  Bossley, 79 S.W.3d at 32.  In adopting this broad concept of evident
partiality, the Texas Supreme Court has explained that where parties agree to
select an arbitrator, they can do so intelligently only if they have access to
all information, such as a professional, familial, or close social relationships,
that might reasonably affect the arbitrator’s partiality.  TUCO,
960 S.W.2d at 635–37.  When the
arbitrator discloses such information, the parties can evaluate any bias at the
outset, “rather than shifting the burden to the courts to do so when a dissatisfied
party challenges an award.”  Id. at 635.  Moreover, the nondisclosure standard likewise
applies to conflicts arising during the course of the arbitration proceedings
and a party, who could have vetoed the arbitration at the time of selection may
disqualify the arbitrator during the course of the proceedings based on a new
conflict which might reasonably affect the arbitrator’s impartiality.  Id.
at 637.  

Thomas asserts that Robertson failed
to disclose that he had sold Patrick’s portion of SLSS to a third party and the
terms of sale provided that his brokerage fee was “contingent,” which gave
Robertson a “financial interest in the continued success of Patrick’s practice”
during the arbitration.  We must
determine whether these non-disclosures might, to an objective observer, create
a reasonable impression of Robertson’s partiality.  See id.
at 636.  

Failure to Disclose the Actual Sale

At the time Thomas suggested Robertson to Patrick as the
neutral arbitrator for their dispute over “dividing the accounts and assets of
the joint practice,” Thomas knew that Robertson was a broker of dental
practices.  Thomas additionally signed
the Engagement Letter in which he acknowledged, despite his testimony at the
hearing, that Robertson might broker either brother’s portion of SLSS to a
third party.  The Engagement Letter
further disclosed that “the standard fee for the transition of a dental practice
through a Buy/Sell is ten percent for the seller.”  As the trial court stated, allowing Robertson
to serve as arbitrator in the dispute and broker either brother’s portion of
SLSS might be a “little unusual”; nevertheless, it is the agreement that Thomas
and Patrick made.  

In TUCO, the
supreme court held that a neutral arbitrator’s acceptance, during the course of
the arbitration proceedings, of a substantial referral from the law firm of a
non-neutral arbitrator established evident partiality as a matter of law.  Id.
at 630.  Here, in contrast, the sale of
Patrick’s portion of the dental practice had no effect on Robertson’s
partiality because, under the agreement, he had been given the authority to
sell a portion of the practice.  An
appearance of partiality is not reasonable if it is based on a relationship
that is remote or has no affect on the arbitrator’s interest in the outcome of
arbitration.  See id. at 636.  Unlike the
plaintiff in TUCO, Thomas was aware
that it was a distinct possibility that Robertson, under terms with which
Thomas had expressly agreed, could sell either brothers portion of SLSS to a
third party.  Therefore, a failure to
disclose the actual sale of Patrick’s portion of the practice cannot be a
ground for disqualification.  Again, the
purpose of disclosure by an arbitrator is to give the parties an opportunity to
evaluate any bias at the outset, “rather than shifting the burden to the courts
to do so when a dissatisfied party challenges an award.”  Id. at
635.  

Because the terms of the Engagement Letter contemplated a
third-party sale, the actual sale of Patrick’s portion of SLSS to a third party
was not, for Thomas, an unexpected outcome. 
We hold that the evidence supports the trial court’s implied finding
that Robertson’s omission, i.e., not disclosing to Thomas that he had done what
the Engagement Letter allowed, did not create a reasonable impression of
Robertson’s partiality in his role as a neutral arbitrator.  See id.

Nature of Robertson’s Broker’s Fee

Although the Engagement Letter
disclosed that Robertson was to be paid by the seller a ten percent broker’s
fee, it did not disclose that the fee might be contingent.  Thomas asserts that the contingent broker’s
fee that Robertson received created in him “a financial stake in the success of
Patrick’s practice” in the year after the sale to the third party and this
stake affected his neutrality.  Thomas
had agreed that Robertson was to provide not only arbitration services but also
transition services.  Thomas had further
agreed that Robertson, as broker, could sell either brother’s practice to a
third party and Robertson, as arbitrator, was “charged with dividing the
accounts and assets of the joint practice once held by the brothers.”  Robertson’s “financial stake” was not related
to Robertson’s role as arbitrator but as broker, and represented his ten
percent broker’s fee, which Thomas had already acknowledged Robertson would be
paid if he brokered the sale of either brother’s portion of SLSS.  Moreover, Robertson’s broker’s fee was only
“contingent” up to a maximum sales price of $139,000.  If Patrick generated for the third party more
than $278,000 in revenue (two times $139,000) in the twelve months after the
sale, Robertson’s broker’s fee could still not exceed $13,900, ten percent of
the maximum sales price to which Patrick had agreed.  Thus, the trial court could have reasonably
concluded that the contingent nature of Robertson’s broker’s fee did not create
a reasonable impression of Robertson’s partiality as arbitrator.  

Thomas additionally asserts that Robertson’s partiality was
shown by his “threat to award Patrick $100,000 if Thomas refused to transfer
the telephone number for the joint practice [to Patrick] within 2 weeks of
Thomas objecting to Robertson’s continued participation,” and this threat
showed Robertson’s understanding that “he had [a] vested interest in Patrick’s
ability to bring patients to [the third party].”  In his letter to Thomas regarding the SLSS
telephone number, Robertson ordered that “full control [of the telephone
number] must be given to Dr. Pat Swonke for the next 90 days, the same amount
of time it has been controlled exclusively by Dr. Tom Swonke.  After about 90 days, it must have a neutral
recording that refers patients to each doctor for the next 18 months.  The costs will be equally shared by each
doctor.”  Robertson would certainly have
benefitted from Patrick’s exclusive control of the SLSS telephone number after
the sale because that would likely have increased the revenue generated by
Patrick for the third party, and, thus, increased Robertson’s broker’s
fee.  However, Robertson issued his order
to Thomas to transfer the telephone number to Patrick, not immediately after
the sale in December 2007, when it would have most positively impacted
Patrick’s revenue generation, but approximately four months later.  Moreover, Thomas brought no evidence to
dispute that he had been, as asserted by Robertson, using the SLSS telephone
number for his sole benefit.  Thus, the
trial court could have reasonably concluded that the motivation for Robertson’s
order was to equalize access to the SLSS telephone number and not to maximize
his broker’s fee.  

Thomas further asserts that
Robertson’s issuance of an award in favor of Patrick in October 2008, “at the
very end of the contingent payment period,” demonstrated that he “was acutely
aware that resolution of [the arbitration] could impact Patrick’s ability to
generate revenue during the payment period and consequently impact Robertson’s
ability to maximize his brokerage fee.” 
We are unable to discern how any decision in the arbitration could have
impacted Patrick’s ability to generate revenue in the year after the sale.  Patrick had already been separately
practicing and generating revenue during the pendency of arbitration and before
the sale.  Even if Robertson had ruled
against Patrick, that would not have affected Patrick’s ability to generate
revenue because the arbitration dealt with balancing the accounts of the no
longer operational SLSS, not Patrick’s current practice.  

We hold that the evidence supports the trial court’s implied
finding that Robertson’s omission, i.e., not disclosing the contingent nature
of his broker’s fee, given that the brothers had agreed that Robertson would
act both as arbitrator and broker, did not create a reasonable impression of
Robertson’s partiality in his role as a neutral arbitrator.  See TUCO,
960 S.W.2d at 636.

We overrule Thomas’s sole issue.

 

 

Conclusion

          We affirm the judgment of the trial
court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Massengale.

 

 











[1]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 171.088(a)(2) (Vernon 2005).

 





[2]
          We recognize that Thomas filed
this suit before Robertson had handed down his arbitration award and Thomas’s
initial complaint was to disqualify Robertson on the ground of evident
partiality.  However, Thomas also
requested that the trial court vacate any award or order by Robertson.  When the trial court heard Thomas’s complaint
and made its decision, Robertson had already issued his award, so, in turn
Thomas was asking the trial court to vacate the award upon a finding of evident
partiality.  Had the trial court made a
finding of evident partiality, Thomas’s remedy would have been to have the
arbitration award vacated.