BUILDERS FIRST SOURCE–SOUTH
TEXAS, LP, Appellant

v.

Gerardo Batista ORTIZ, Appellee

NO. 14–16–00256–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinions filed January 26, 2017

Review Denied June 2, 2017

Jason Steed, Ross Williams, David Webster, Jay Marshall Wallace, Dallas, TX, for Appellant.

Tobias Anthony Cole, Brian H. Crockett, Houston, TX, for Appellee.

Panel consists of Justices Christopher, Jamison, and Brown

## MAJORITY OPINION

Tracy Christopher, Justice

This is an interlocutory appeal of a trial court's order setting aside two sanctions orders issued by an arbitrator before the American Arbitration Association (the AAA). The trial court held that the arbitrator's sanctions orders were obtained through evident partiality by the arbitrator and appointed a new arbitrator over the dispute. Appellant Builders First Source–South Texas, LP (Builders First) argues that the trial court erred in setting aside the sanctions orders, and in removing the arbitrator and appointing a new arbitrator, because the arbitrator's orders were interlocutory. We conclude that the sanctions orders were final because of a prior nonsuit of the claims in arbitration, and that the trial court did not err in setting aside the sanctions orders. We also conclude that, although the trial court could order arbitration before a new arbitrator, it erred in appointing that new arbitrator. Instead the parties must return to the AAA for an appointment of the new arbitrator. Appellee agrees that the entire case should be stayed pending the arbitration. We thus affirm in part and reverse and remand in part the trial court's order.

## BACKGROUND

Appellee Gerardo Batista Ortiz (Batista) alleges that he suffered injuries while working on a construction site for Builders First, a non-subscriber to the Texas Workers' Compensation Act. An arbitration provision in his employment agreement with Builders First required claims for job-related injuries to be submitted to arbitration before the AAA. Pursuant to the arbitration provision, Batista filed claims in arbitration for negligence and gross negligence against Builders First.

The AAA appointed Lynne Gomez to serve as arbitrator. Shortly after her appointment, Gomez submitted a sworn disclosure, in which she stated that none of the party representatives, law firms, or parties had appeared before her in past arbitration cases. The disclosure also stated that Gomez had conducted a check for conflicts and that she had nothing to disclose. The parties thereafter proceeded with discovery and arbitration of Batista's claims.

Nearly a year later, the parties conducted a telephone hearing with arbitrator Gomez. While waiting for Batista's lead counsel to join the call, Gomez and Jay Wallace, counsel for Builders First, start-

ed to discuss two previous cases in which Wallace had appeared as counsel for a party before Gomez. Batista's counsel alleges that, when he joined the call, the conversation between Gomez and Wallace was "extremely friendly and appeared to joke about Arbitrator Gomez's favorable decisions for Jay Wallace in past Arbitrations." At the end of the call, Gomez disclosed to Batista's counsel that Wallace had appeared before her twice in the past. Gomez then submitted a written amended disclosure identifying the cases as an employment arbitration approximately seven years prior and a non-subscriber case "some years back." Gomez further stated that she "did not remember those cases, or that Mr. Wallace had handled them and appeared before [her], until he mentioned it today." Gomez stated that the circumstances would not affect her ability to decide the matter in a fair and impartial manner.

Three days later, Batista's counsel filed a written objection with the AAA to Gomez's continued involvement as arbitrator. In the objection, counsel argued that Gomez was not impartial and cited to previous rulings that he claimed showed Gomez's bias. These rulings included a denial of Batista's request for a hearing to discuss motions filed by both sides and the denial of Batista's pre-hearing motions while granting Builders First's motions. Batista's counsel also pointed to the conversation during the telephone hearing that led to the amended disclosure and the fact that Builders First's counsel knew about Gomez's previous involvement in his cases but did not disclose that to Batista's counsel.

Two days after the written objection, Batista filed a nonsuit without prejudice of

his claims in the AAA arbitration.[1] Four days after the nonsuit was filed, the AAA issued a letter stating that it reaffirmed Gomez as the arbitrator of the matter.

After Batista nonsuited his claims in the arbitration, Builders First re-urged a motion for sanctions against Batista related to a deposition involving Builders First, and non-party Providence Risk and Insurance Services, Inc. (Providence Risk) re-urged a motion for sanctions related to a subpoena duces tecum. Gomez notified counsel for both sides that the motions for sanctions had survived Batista's nonsuit of his claims. Gomez issued an order finding Batista engaged in sanctionable conduct against Providence Risk and awarded $3,098.18 in its favor. Gomez issued another order finding that Batista's counsel engaged in sanctionable conduct and discovery abuse against Builders First and awarded monetary sanctions in the amount of $1,419 in its favor.

Batista then pursued his claims against Builders First in district court by joining it in a lawsuit Batista had previously filed against two other defendants regarding his injuries. Almost a month later, Batista filed a "Motion to Set Aside Fraudulent Arbitrator's Orders and Motion for Protective Order." In the motion, Batista asked the district court to set aside the two sanctions orders issued by Gomez on the basis of evident partiality shown by the failure to disclose the prior cases with Builders First's counsel. Batista also sought an order protecting him from arbitrating the matter with the AAA. In the alternative, Batista sought an order allowing him to select a neutral arbitrator to be accepted by the court or an order prohibiting Gomez from presiding over any arbi-

1. At the time Batista filed his nonsuit in arbitration, Builders First's fully briefed and orally argued Motion for Summary Judgment on

Batista's claims for negligence and gross negligence was pending before Gomez.

tration. The next day, Builders First filed a motion to compel arbitration asking the court to order the parties to arbitrate their dispute before the AAA and to either dismiss or stay all proceedings in the district court pending completion of the arbitration.

After an oral hearing, the district court signed an order in which it stated Batista's "Motion to Set Aside Arbitrator's Orders and Motion for Protective Order" should be granted, and David Medina will be appointed to "arbitrate this matter." The district court's order further set aside all orders and decisions issued in the AAA arbitration before Gomez, and decreed that all orders and decisions issued in that arbitration "were obtained by Arbitrator Gomez's ... fraudulent nondisclosure and partiality towards Jay Wallace, Ross Williams and Builders First Source." The order did not expressly address Builders First's motion to compel and did not stay the proceedings pending completion of the arbitration. Both sides asked for further clarification of the district court's order, but no further orders were issued.

Builders First timely filed this appeal pursuant to section 51.016 of the Texas Civil Practices and Remedies Code, and section 16(a)(1) of the Federal Arbitration Act.

## ANALYSIS

Although Builders First initially challenged the trial court's order in four issues, the parties have narrowed the issues on appeal. In their briefing, the parties agree that Batista and Builders First should be ordered to arbitration before the AAA and that the district court proceeding should be stayed pending that arbitration. As stated in its Reply Brief, Builders First thus now challenges the district court's order in two issues: (1) whether the district court had jurisdiction to vacate or set aside the sanctions orders signed by Gomez; and (2) whether the district court had jurisdiction to remove Gomez and appoint a new arbitrator.

Both issues raised by Builders First are predicated on its argument that the orders signed by Gomez were interlocutory, rather than final. According to Builders First, the district court had no jurisdiction to set aside the orders for evident partiality or remove the arbitrator before a final arbitration award was issued. We thus begin our analysis by determining whether the orders issued by Gomez were interlocutory or final. We then address whether the district court erred by setting aside the sanctions orders and appointing a new arbitrator when the parties return to arbitration.

## I. Were Arbitrator Gomez's orders interlocutory or final?

### A. Standards of review and governing law.

It is undisputed that the Federal Arbitration Act (the FAA) governs the arbitration provision at issue in this case. When reviewing claims under the FAA, we look to federal law to resolve substantive issues, but apply state law to resolve procedural issues. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). We review a trial court's order setting aside or vacating an arbitration award under a *de novo* standard of review. *See Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 844 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Review of a trial court's decision on evident partiality also involves a factual inquiry. *See id.* When a trial court resolves fact disputes in the context of a claim of evident partiality or misconduct, we review the trial court's fact findings for legal and factual sufficiency while legal conclusions are reviewed *de novo*. *See id.* (quoting *Las*

*Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 66 (Tex. App.—El Paso 2010, pet. denied)). Where, as here, no findings of fact or conclusions of law are issued by the trial court, we imply all facts supported by the evidence and necessary to support the judgment. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The trial court's order will be affirmed if it can be upheld on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109.

### B. *The sanctions orders were final.*

 In challenging the trial court's order setting aside the sanctions orders and appointing a new arbitrator, Builders First relies heavily on the Fifth Circuit decision in *Gulf Guaranty Life Insurance Co. v. Connecticut General Life Insurance Co.*, 304 F.3d 476 (5th Cir. 2002). In *Gulf Guaranty*, the Fifth Circuit held that the FAA does not provide for intervention or removal of arbitrators in an arbitration proceeding before the final award is issued. *See* 304 F.3d at 487 ("The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award . . . ."); *see also id.* at 490 ("[T]he FAA appears not to endorse court power to remove an arbitrator for any reason prior to issuance of an arbitral award."); *In re Ihi*, 324 S.W.3d 891, 894 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("If the FAA applies, as here, a trial court does not have the power to review

any interlocutory ruling by an arbitration panel.") (citing *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980)). We find these authorities inapposite because Batista had nonsuited his claims in arbitration, thereby making the sanctions orders final for purposes of trial court review.[2]

The AAA rules governing the parties' dispute do not expressly address nonsuit of claims. *See* American Arbitration Association, Employment Arbitration Rules and Mediation Procedures Rule 5 (Nov. 1, 2009) (addressing changes of claim by filing new or different claim or counterclaim but not addressing nonsuit); *cf. Morgan v. Bronze Queen Mgmt. Co., LLC*, 474 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting nonsuit taken in arbitration in accordance with JAMS Rule 13(b)). The arbitration provision in Batista's employment agreement does provide that the arbitrator has "authority to consider and grant motions consistent with the Texas Rules of Civil Procedure . . . including, but not limited to, motions for summary judgment." Because state procedural rules govern nonsuits and the parties' agreement contemplates application of the Texas Rules of Civil Procedure, we will apply state procedural law to determine the effect of Batista's nonsuit. *See* Tex. R. Civ. P. 162; *see also Tipps*, 842 S.W.2d at 272 (Texas courts applying the FAA apply state procedural rules rather than federal procedural rules).

---

**2.** Batista argues at length that we are not bound by, and should not follow, *Gulf Guaranty* because it conflicts with the holding in *Burlington Northern Railroad Co. v. TUCO, Inc.* that the evident partiality ground for vacatur applies to conflicts arising during the course of the arbitration proceedings. 960 S.W.2d 629, 637 (Tex. 1997) ("Moreover, to preserve the integrity of the selection process, we hold that a party who could have vetoed the arbitrator at the time of selection may

disqualify the arbitrator during the course of the proceedings based on a new conflict which might reasonably affect the arbitrator's impartiality."). We need not address whether *Gulf Guaranty* conflicts with *TUCO* or governs the trial court's ability to appoint a new arbitrator or set aside orders in this case because we find the arbitrator's orders were final and subject to review in light of Batista's nonsuit of his claims.

Under Rule 162, a plaintiff may nonsuit a claim at any time before introducing all of their evidence other than rebuttal evidence. TEX. R. CIV. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). "A nonsuit terminates a case 'from the moment the motion is filed.'" *Epps*, 351 S.W.3d at 868 (quoting *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A trial court retains power after a nonsuit is filed to rule on a pending request for sanctions. *See* TEX. R. CIV. P. 162; *Crites v. Collins*, 284 S.W.3d 839, 842 (Tex. 2009) (per curiam) (sanctions request may be an affirmative claim for relief that survives voluntary nonsuit). When a motion for sanctions remains pending at the time of nonsuit, the order determining the last sanctions motion is the final order subject to review. *See Crites*, 284 S.W.3d at 841 ("If other claims remain in the case, an order determining the last claim is final.") (internal quotation omitted).

Batista voluntarily nonsuited his claims without prejudice on August 24, 2015. The only claims for affirmative relief that remained pending at the time of the nonsuit were the sanctions motions filed by Builders First and Provident Risk. Once those sanctions motions were adjudicated, no further issues remained before the arbitrator. As a result, the sanctions orders were final, rather than interlocutory, and were subject to review by the trial court. *See Crites*, 284 S.W.3d at 841. This conclusion is consistent with general rules of finality governing arbitration awards. *See, e.g., In re Chevron U.S.A., Inc.*, 419 S.W.3d 318, 326 (Tex. App.—El Paso 2010, orig. proceeding) ("An arbitral award is generally deemed final when it evidences the arbitrators' intention to resolve all claims submitted for arbitration.").

The sanctions orders issued by Gomez were reviewable for evident partiality by virtue of Batista's prior nonsuit of his arbitration claims. We overrule Builders First's issues challenging the trial court's jurisdiction to review the arbitrator's orders.

## II. Did the Trial Court Err in Finding Evident Partiality?

On appeal, Builders First does not set forth a separate issue challenging whether the trial court properly found the sanctions orders should be set aside and a new arbitrator appointed because of evident partiality. Builders First does state in a footnote in its Appellant's Brief that "[e]ven if the court could consider Batista's allegations, those allegations have no merit." There is no citation to authorities in support of this statement in the brief, but Builders First does cite to the pages in the clerk's record where it argued in response to Batista's motion that "no evidence establishes fraud or grounds for disqualification." In its Reply Brief, Builders First expands on its argument, again only in a footnote, by also citing the fact that the AAA already duly considered Batista's allegations of bias and overruled the contention by reaffirming Gomez as arbitrator.

Texas Rule of Appellate Procedure 38.1(i) requires an appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Though we interpret the briefing rules reasonably and liberally, a party asserting error must still put forth specific argument and analysis showing that the record and law supports their contentions. *See San Saba*, 171 S.W.3d at 338. We do not believe that a one-sentence footnote citing to a party's arguments in the trial court fully satisfies the briefing requirements. *See id.* Nevertheless, we consider Builders First's

argument that Batista's allegations of evident partiality "have no merit" and affirm the trial court's order.

 Under the FAA, parties may apply to an appropriate court to vacate an arbitration award based on grounds of evident partiality. *See* 9 U.S.C. § 10(a)(2); *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014). Evident partiality may be shown by an arbitrator's failure to "disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Burlington N. R.R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 636 (Tex. 1997). An arbitrator need not disclose trivial relationships or connections, but the nondisclosure itself—rather than actual partiality or bias—establishes the evident partiality ground. *See id.*; *Amoco D.T.*, 343 S.W.3d at 843 (concluding that the *TUCO* standard for evident partiality is applicable to cases governed by FAA). As we noted in *Amoco D.T.*, requiring up-front disclosure is important because it impacts the parties' ability to choose their arbitrators at the outset with all of the pertinent facts:

> To choose their arbitrators intelligently, however, the parties must have access to all information which might reasonably affect the arbitrator's partiality. This allows the parties to evaluate any potential bias at the outset, rather than shifting the burden to the courts to do so when a dissatisfied party challenges an award.

343 S.W.3d at 843 (quoting *TUCO*, 960 S.W.2d at 635). The party seeking to vacate an arbitration decision based on evident partiality bears the burden of proof. *Id.* at 841.

In his motion to set aside the sanctions orders, Batista cited Gomez's failure to disclose the fact that counsel for Builders First had appeared before her in two prior matters, the fact that she indicated she had performed a conflicts check but apparently had not done so, and the telephone conversation in which Gomez and Builders First's counsel appeared "extremely friendly" and joked about prior rulings in favor of Builders First. Batista argued that, under *TUCO*, Gomez's failure to disclose the prior connection with Builders First's counsel satisfied the evident partiality standard. We agree.

Although an arbitrator need not disclose trivial relationships or connections, the fact that Builders First's counsel had appeared twice before the arbitrator in the past was not a trivial matter under the facts of this case. Gomez was specifically asked on the disclosure form whether any of the law firms in the case had appeared before her in past arbitrations. In her sworn answer, Gomez answered "no" and that she had conducted a conflicts check and had nothing to disclose. Batista's counsel stated at the hearing that he would have struck Gomez had he known of the prior appearances because prior appearances would mean the arbitrator may have been paid substantial sums of money by the defense and likely would have ruled in favor of the defense in the past (an assumption based on the fact that the defense did not strike the arbitrator). In fact, Builders First has not argued that the prior appearances were trivial connections or relationships that did not need to be disclosed.[3]

In *Alim v. KBR (Kellogg, Brown & Root)—Halliburton*, the court addressed a similar claim of evident partiality based on an arbitrator's failure to disclose that a

---

**3.** Instead, Builders First argued that *TUCO* did not apply because there was no final award, Gomez did disclose the information in her amendment, and Batista did not show she was biased under the AAA rule for disqualification.

party representative had previously appeared before the arbitrator as a party representative of a related entity. 331 S.W.3d 178, 182 (Tex. App.—Dallas 2011, no pet.). The court found that such a relationship was not trivial and should have been disclosed:"[t]he fact that [a party representative] had appeared before [the arbitrator] in a prior arbitration as a party representative for Halliburton Energy Services—apparently a former employer of Alim—was not a trivial matter." *Id.* at 181–82. The arbitrator's failure to disclose the information and his failure to amend the disclosure supported a finding of evident partiality. *Id.* at 182.

Likewise, the fact that counsel for Builders First had appeared before Gomez in two prior arbitrations was not a trivial matter and should have been disclosed. The failure to disclose the information might, to an objective observer, create a reasonable impression of partiality. *See Alim,* 331 S.W.3d at 182; *see also Amoco D.T.,* 343 S.W.3d at 850 ("[T]he fact that a reasonable person could conclude the circumstances *might* have affected [the arbitrator's] impartiality triggered his duty to disclose.").

Builders First argued in the trial court that Gomez did ultimately amend her disclosure after the telephone conference revealed the forgotten connection to Builders First's counsel, and thus the rationale of *TUCO* did not apply. We conclude the amended disclosure in this case did not prevent Batista from establishing the evident partiality ground for two reasons.

First, the amended disclosure came almost a year into the arbitration, well after the time that Batista could have struck Gomez as an arbitrator based on the prior appearances by counsel. Batista accepted Gomez's service as an arbitrator in light of the information provided in the initial disclosure. The information provided in the initial disclosure was not complete or accurate. As a result, Batista was not able to evaluate Gomez's potential bias towards Builders First with the full facts at the outset of the arbitration. *See TUCO,* 960 S.W.2d at 635–36 (discussing need for all information which might reasonably affect an arbitrator's partiality in order to make intelligent decision and strong policy favoring up-front disclosure of potential conflicts).[4]

Second, the evidence presented a fact issue with regard to whether Gomez amended her disclosure because she did not remember the prior appearances by Builders First's counsel or only because the prior appearances became known to Batista in the phone call. Batista's counsel stated that when he joined the arbitration telephone hearing, Gomez and counsel for Builders First appeared "extremely friendly" and joked about prior rulings in favor of counsel. In contrast, Builders First's counsel stated that "Arbitrator Gomez's and Mr. Wallace's discussions were about the weather and similar non-legal, non-case-related topics." This presented a fact question regarding the arbitrator's knowledge for the trial court to resolve. *See Mariner Fin. Grp., Inc. v. Bossley,* 79

4. Builders First argued at the hearing on the motion to set aside the sanctions orders that Batista was in fact able to object to Gomez under Rule 16 of the AAA rules addressing disqualification of an arbitrator and the AAA rejected Batista's challenge to Gomez. According to Builders First, Batista was, therefore, afforded the same procedure he would have had if the disclosure had been made timely. We do not agree. Batista was not afforded the same procedure he would have had if the disclosure had been made from the beginning because, had he known the information at the time the initial disclosure was made, he would have been able to strike Gomez during the selection process, rather than having to utilize the disqualification rule.

S.W.3d 30, 33 (Tex. 2002) ("Thus, the state of [arbitrator's] knowledge about [witness for party] is a fact issue material to determining his partiality.").

█ When a trial court resolves fact disputes regarding evident partiality, the trial court's fact findings underlying the decision to confirm or vacate are reviewed for legal and factual sufficiency. *See Amoco D.T.*, 343 S.W.3d at 844. Given the conflicting evidence in the record, the evidence supports a finding of evident partiality. *See Tenaska Energy*, 437 S.W.3d at 526 (unchallenged findings of fact were binding because they were supported by some evidence, and evidence demonstrated evident partiality); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (conflicting evidence presented issue for fact finder to resolve and was some evidence to support amount of damages). We overrule Builders First's claim that Batista's allegations have no merit.[5]

### III. The Arbitrator Appointment

█ The trial court appointed David Medina to arbitrate the dispute. In addition to arguing that the trial court lacked jurisdiction to remove the arbitrator, which we addressed above, Builders First argues that the trial court abused its discretion by appointing an arbitrator outside the AAA and that the parties should be ordered back to arbitration before Gomez. Batista agrees that, "as part of the terms of employment, the Contract provided for all claims to be arbitrated under the rules of AAA." However, Batista does not agree that he should be compelled to arbitrate before Gomez. We conclude that the trial court should order arbitration before a new arbitrator in the AAA as provided for in the agreement of the parties.

When a court vacates an award based on evident partiality, both the FAA and the Texas Arbitration Act (TAA) allow the trial court to order a rehearing before a new arbitrator. *See* 9 U.S.C. § 10(b) ("If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."); Tex. Civ. Prac. & Rem. Code Ann. § 171.089(a)(1) (West 2011) (on vacating an award, the court may "order a rehearing before new arbitrators chosen: (1) as provided in the agreement to arbitrate; or (2) by the court under Section 171.041, if the agreement does not provide the manner for choosing the arbitrators."). Under both Acts, any rehearing should comply with the parties' agreement. *See* 9 U.S.C. § 10(b); Tex. Civ. Prac. & Rem. Code Ann. § 171.089(a). Because the agreement between the parties states that they will conduct the arbitration under the AAA, the parties must go through the AAA appointment process for selection of a new arbitrator. We therefore hold that the appointment of Medina must be set aside, and the parties must return to the AAA for the appointment of a new arbitrator (not Gomez).

### CONCLUSION

The trial court had jurisdiction to set aside the arbitrator's sanctions orders and properly did so based on evident partiality. The trial court also had jurisdiction to hold that the matter be arbitrated before a new arbitrator, but pursuant to the parties' agreement to arbitrate, the parties must go through the AAA for the appointment

---

5. By concluding that the evidence supports a finding of evident partiality, we do not hold that Gomez was actually biased—only that the failure to disclose non-trivial information might, to an objective observer, create a reasonable impression of partiality. *See TUCO*, 960 S.W.2d at 636; *Amoco D.T.*, 343 S.W.3d at 848 – 49.

of a new arbitrator. The trial court erred in failing to stay the proceedings pending the completion of the arbitration. We, therefore, affirm in part and reverse in part the trial court's order. We remand to the trial court for further proceedings consistent with this opinion.

(Jamison, J., concurring).

Martha Hill Jamison, Justice, concurring

I agree with the majority opinion. I write separately to highlight gaps in the record that mandate the seemingly harsh conclusion that Batista's rights were prejudiced by the arbitrator's evident partiality based on her failure to initially disclose prior cases she had arbitrated for Builders First's counsel, even though she filed an amended disclosure noting them.[1]

The relevant AAA rules are not in our record; however, the employment agreement in the record indicates the parties agreed to utilize AAA's Employment Arbitration Rules.[2] The record provides no other clues regarding the procedures governing this case. The AAA rules fail to address several key matters that sometime appear in arbitration rules and would have assisted our analysis:

- The AAA rules do not address an amended disclosure such as was used here; the form appears to have been created by the arbitrator herself.[3]

- AAA Rule 15 concerns arbitrator disclosures, and AAA Rule 16b concerns objections to the "continued service" of the arbitrator. It is unclear which, if either, rule was followed in this matter.[4]

- The AAA rules do not provide that, in the event of a new or subsequent disclosure from the arbitrator, the selection process may be repeated. Rather, the aggrieved parties apparently have only the option of asking the AAA to disqualify the arbitrator.

- The AAA rules do not require parties or their counsel to also disclose any circumstances likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any past or present relationship with her.[5]

- The AAA rules state no procedures or criteria for the disqualification hearing, selection of the decision makers, or the decision.

According to Texas law, as articulated in the majority opinion, evident partiality is established by the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias. *Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 636 (Tex. 1997); *see*

---

1. The majority affirms the trial court's order, as relevant here, setting aside the arbitrator's orders "obtained by fraudulent non-disclosure and partiality."

2. *See* American Arbitration Association, Employment Arbitration Rules and Mediation Procedures (Nov. 1, 2009).

3. AAA Rule 15a indicates the obligation to disclose shall remain in effect throughout the arbitration; however, no rule instructs arbitrators in complying with this obligation.

4. AAA Rule 16b provides that AAA shall determine whether the arbitrator should be

disqualified (and the grounds therefore, including "any grounds for disqualification provided by applicable law") and shall inform the parties of its decision, which decision shall be conclusive. Presumably, this procedure was followed here.

5. In this case, it appears that Builders First's counsel was aware of the prior representation at least before the arbitrator. It is not clear whether counsel was aware at the time of the original arbitrator appointment or nondisclosure.

*also Thomas James Assocs. v. Owens*, 1 S.W.3d 315, 321 (Tex. App.—Dallas 1999, no pet.) (extending *TUCO*'s holding to arbitrations subject to the FAA).[6] As stated by the majority, under the FAA, one ground for vacatur is evident partiality, which may be shown by an arbitrator's failure to "disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." AAA Rule 16 states that an arbitrator "shall be subject to disqualification" for "any grounds for disqualification provided by applicable law." It is unclear from the record what criteria were applied by the AAA in making its determination to reaffirm the arbitrator.

Our sister court has concluded that an AAA arbitrator's failure to disclose that a party representative had appeared before him in a past arbitration—and the failure to amend or correct his answer to the question specifically inquiring as to that fact—constituted evident partiality and constituted grounds for vacating the arbitration award under the FAA. *See Alim v. KBR (Kellogg, Brown & Root)—Halliburton*, 331 S.W.3d 178, 182 (Tex. App.—Dallas 2011, no pet.). This suggests that, in an appropriate case, an amended disclosure can be made. It does not, however, provide guidance to this court as to whether an amended disclosure would cure the evident partiality reflected in the original nondisclosure.

**6.** This standard reflects the supreme court's determination that courts should not undertake evaluations of partiality that are better left to the parties. *Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 678 (Tex. App.—Dallas 2011, pet. denied) (citing *TUCO*, 960 S.W.2d at 636). "When choosing a neutral arbitrator, the parties must weigh the competing factors of the arbitrator's knowledge and experience against his potential conflicts; parties can only perform that analysis if they have access to all of the information

With these additional comments, I respectfully concur.

that could reasonably affect the arbitrator's partiality." *Id.* (citing *TUCO*, 960 S.W.2d at 635). After disclosure is made, the parties can make their determination concerning potential bias before the arbitration begins, a process that is more desirable than a court making the determination after an award is in place. *Id.* "While a neutral arbitrator need not disclose relationships or connections that are trivial, the conscientious arbitrator should err in favor of disclosure." *TUCO*, 960 S.W.2d at 637.