**Affirmed in Part, Reversed and Remanded in Part, and Majority and Concurring Opinions filed May 7, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00869-CV

---

## IN THE MATTER OF THE MARRIAGE OF WILLIAM EDWARD PISKE, JR. AND JAMIE KRIVAN LANGE

---

**On Appeal from the 246th District Court
Harris County, Texas
Trial Court Cause No. 2014-59709**

---

## MAJORITY OPINION

Jamie Krivan Lange appeals the trial court's judgment confirming an arbitration award entered in favor of William Edward Piske, Jr. On appeal, Lange asserts the arbitrator exhibited evident partiality in Piske's favor by failing to disclose his personal and professional connections with one of Piske's attorneys. For the reasons below, we reverse the trial court's judgment, vacate the arbitration award, and remand for further proceedings consistent with this opinion.

BACKGROUND

## I.      Underlying Facts and Arbitration

Lange and Piske married in 2008 and Piske filed a petition for divorce in 2014. Lange filed a counter-petition asserting breach of contract and tort claims against Piske arising from the parties' joint business dealings. Lange and Piske filed a joint motion to refer the case to arbitration in accordance with their premarital agreement.[1]

In their "Amended Agreed Order Appointing Arbitrator and Special Master," Lange and Piske appointed Houston family-law attorney Warren Cole to arbitrate their dispute. After his appointment, Cole emailed both parties' attorneys a document entitled, "Family Law Arbitration Rules." Under the subtitle "Qualifications of Arbitrator," the rules state, in relevant part:

> The Arbitrator shall disclose to the parties any circumstance likely to affect impartiality, including any bias or financial or personal interest in the result of the arbitration, or any past or present relationship with the parties or their counsel.

At the parties' initial status conference with Cole, Cole represented that he did not have a material relationship with any of the parties or their counsel other than normal professional relationships.

In January 2017, Houston family-law attorney Joan Jenkins filed a notice of

---

[1] The premarital agreement's arbitration clause does not state whether it is governed by the Federal Arbitration Act (the "FAA") or the Texas Arbitration Act (the "TAA"). The clause simply states, "[t]he provisions for binding arbitration must be in accordance with Texas arbitration law, including but not limited to section 153.0071 of the Texas Family Code." Therefore, both apply. *See In re Devon Energy Corp.*, 332 S.W.3d 543, 547 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) ("If an arbitration agreement does not specify whether the FAA or the TAA applies, but states that it is governed by the laws of Texas, both the FAA and the TAA apply unless the agreement specifically excludes federal law."); *see also Natgasoline LLC v. Refractory Constr. Servs., Co.*, 566 S.W.3d 871, 878 (Tex. App.—Houston [14th Dist.] 2018, pet. filed).

appearance in the case as Piske's co-counsel. According to Cole, he did not supplement his initial disclosures after Jenkins' appearance.

The arbitration hearings were conducted between February 27 and March 7, 2017. The trial court's order appointing Cole required the arbitration award be issued within 21 days after the case was closed, but Cole did not issue an award within this period. On July 12, 2017, Jenkins emailed Cole requesting a ruling:

> Warren — You know how much I think of you as a friend and a lawyer however I must address the issue with this case and your lack of a ruling. It has now been 18 weeks since this case was tried, almost 5 months. These parties need closure. Each time you reply to us when we inquire about a ruling you tell us you are "working on it" and should have it out within a few days. Still nothing. Can you please rule? With all due respect, this is becoming beyond anything litigants should be required to endure, especially when they are paying for your services. I would appreciate a reply today. Thank you. Jo.

Cole issued his arbitration award several days later, ruling in favor of Piske and against most of Lange's claims. The trial court scheduled a hearing to enter a final divorce decree.

## II. Post-Arbitration Legal Proceedings

Four days before the scheduled hearing, Lange filed a motion for continuance. Asserting she had "bona fide evidence of an undisclosed social relationship" between Cole and Jenkins, Lange requested an opportunity to conduct additional discovery. Concurrently, Lange also filed an emergency motion to vacate the arbitration award. Lange asserted her rights were "prejudiced by Cole's evident partiality arising from Cole's failure to disclose a close friendship with Piske's counsel, Joan Jenkins."

Piske filed a response to Lange's motion to vacate and attached an affidavit signed by Jenkins which states, in relevant part:

- Jenkins has known Cole for 30-plus years, and both she and Cole are very involved with State Bar activities and CLE programs. Jenkins and Cole often are featured on the same CLE programs.

- Jenkins and Cole both "regularly practice in the area of high wealth/high profile divorces." Attorneys practicing in this area regularly see each other in practice.

- Along with other family lawyers, Jenkins "attended three or four outdoor cookouts at Warren Cole's home on Galveston Island." These events were associated with the State Bar.

- Cole, Jenkins, and their respective significant others were part of a group of Houston attorneys that spent the weekend as guests at a mutual friend's ranch.

At the hearing, the trial court declined to rule on Lange's motion for a continuance and stated the motion was "not timely filed." The trial court signed a "Final Decree of Divorce Pursuant to Arbitrator's Award" and set Lange's motion to vacate for an evidentiary hearing.

Lange filed a motion for new trial or, alternatively, a motion to vacate, modify, correct, or reform the trial court's divorce decree and attached transcripts of Cole's and Jenkins' depositions. At her deposition, Jenkins stated that Cole had (1) mediated disputes for her on five-or-six occasions and (2) arbitrated a division of artwork on a case five-to-seven years ago. Jenkins recalled that she was an arbitrator on a case Cole "had some involvement in." Jenkins did not recall any details about the case and stated that it "was a long, long time ago." Reviewing her affidavit, Jenkins reiterated that the "three or four outdoor cookouts" she attended at Cole's Galveston home were State Bar events. Jenkins also discussed the weekend she, Cole, and their respective significant others spent as guests at a mutual friend's ranch and stated she "had nothing to do with planning the get-together" but was there as her significant other's guest.

Cole stated at his deposition that he had known Jenkins for approximately 30

years. Cole testified he served as mediator in a case for Jenkins "maybe five" times and served as a "clean up arbitrator" for Jenkins in a telephone arbitration. When questioned regarding the statements made in Jenkins' affidavit, Cole stated he recalled only one outdoor cookout at his Galveston home. Cole testified that the weekend at a mutual friend's ranch was attended by six-to-eight couples.

After the evidentiary hearing, the trial court signed two orders denying Lange's motion to vacate and motion for new trial. Lange timely appealed.

## ANALYSIS

Citing section 171.088 of the Texas Arbitration Act (the "TAA"), Lange asserts Cole's failure to disclose his personal and professional connections with Jenkins establishes evident partiality that warrants vacatur of Cole's arbitration award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(2)(A) (Vernon 2019). Lange also challenges the trial court's denial of her motion for new trial and motion for a continuance.

Piske argues (1) Lange waived her evident-partiality claim by failing to raise it during arbitration and (2) the trial court correctly denied Lange's post-arbitration motions because Cole's and Jenkins' limited relationship did not trigger Cole's duty to disclose.

We address these arguments below.

## I.     Evident Partiality

### A.     Governing Law and Standards of Review

Under the TAA, a trial court shall vacate an award if the rights of a party were prejudiced by the "evident partiality of an arbitrator appointed as a neutral arbitrator." *Id.*; *see also Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017). The standard for evident partiality requires vacating

5

an award if an arbitrator "fails to disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 525 (Tex. 2014) (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 147 (1968), and *Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 630 (Tex. 1997)).[2] An arbitrator need not disclose trivial relationships or connections. *Id.*; *see also Builders First Source-S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 458 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ["*Builders First*"].

*Tenaska*'s evident-partiality standard applies to conflicts arising both before and during the course of arbitration proceedings. *See TUCO Inc.*, 960 S.W.2d at 637. The party seeking to vacate an arbitration award on evident-partiality grounds bears the burden of proof. *Builders First*, 515 S.W.3d at 458.

Evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information shows actual partiality or bias. *TUCO Inc.*, 960 S.W.2d at 636; *Builders First*, 515 S.W.3d at 458. This approach reflects the Texas Supreme Court's determination that courts should not undertake evaluations of partiality that are best left to the parties. *See TUCO Inc.*, 960 S.W.2d at 635-36; *see also Tenaska Energy, Inc.*, 437 S.W.3d at 524-25. The most attractive arbitrators often are those "with extensive experience in the field related to the dispute" — but this extensive experience will foreseeably produce arbitrators who have had prior business dealings with a party. *Tenaska Energy, Inc.*, 437 S.W.3d at 524. While extensive experience should not disqualify an arbitrator *per se*, "disclosing the information can help the parties attain the impartiality they seek by evaluating potential bias at the outset of the arbitration." *Id*. at 524.

---

[2] The standard discussed in *Tenaska Energy, Inc.* applies to evident-partiality determinations under both the TAA and the FAA. *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 843 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

6

We review *de novo* a trial court's order confirming or vacating an arbitration award. *Builders First*, 515 S.W.3d at 455. Our review of a trial court's evident-partiality determination also involves a factual inquiry. *Id.*; *see also Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 65 (Tex. App.—El Paso 2010, pet. denied). To the extent disputes about material facts exist in the context of an evident-partiality claim, we review the trial court's resolution of those disputes for legal and factual sufficiency. *Builders First*, 515 S.W.3d at 455; *see also Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 844 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Where, as here, no findings of fact or conclusions of law have been issued by the trial court, we infer all facts supported by the evidence and necessary to support the judgment. *Builders First*, 515 S.W.3d at 456.

## B.    Analysis

In her motion to vacate, Lange cited Cole's failure to disclose (1) Jenkins had been a guest at Cole's Galveston home for three-or-four outdoor cookouts; (2) Cole and Jenkins with their respective significant others spent the weekend at a mutual friend's ranch; (3) Cole previously had served as an arbitrator for one of Jenkins' cases; and (4) Cole previously had mediated disputes for Jenkins on five-or-six occasions. Lange argued Cole's failure to disclose these prior connections with Jenkins satisfied the evident-partiality standard. We agree.

Although an arbitrator need not disclose trivial relationships or connections, the interactions at issue here are not trivial under the facts of this case. Cole and Jenkins had a social relationship that extended beyond the purely professional realm. Although in the context of a State Bar event, Jenkins previously had been a guest at Cole's Galveston home. Cole, Jenkins, and their respective significant others also spent a weekend at a mutual friend's ranch.

7

Likewise, Cole's and Jenkins' professional relationship was not just that of two attorneys practicing in a subset of the Houston family-law bar — Cole previously had served as a mediator and arbitrator for Jenkins for a number of cases. These facts might, to an objective observer, create a reasonable impression of Cole's partiality. *See Tenaska Energy, Inc.*, 437 S.W.3d at 525.

We turn now to Piske's arguments challenging Lange's evident-partiality claim.

Focusing on the applicable standard of review, Piske argues that "any fact questions regarding evident partiality were resolved by the trial court after hearing the evidence, against Lange and her unsupported arguments of evident partiality." Asserting these factual determinations are supported by legally and factually sufficient evidence, Piske contends that the trial court's judgment confirming Cole's arbitration award should be affirmed. Piske's argument relies upon a mistaken standard of review.

The ultimate question at issue here — whether the undisclosed facts might give an objective observer a reasonable impression of Cole's partiality — is a matter of law we review *de novo* as a matter of well-established law. *See Builders First*, 515 S.W.3d at 455; *see also Amoco D.T. Co.*, 343 S.W.3d at 844. Because an evident-partiality determination involves a factual inquiry, a trial court's ruling is capable of resolving material conflicts in the evidence. *Builders First*, 515 S.W.3d at 460; *see also Amoco D.T. Co.*, 343 S.W.3d at 844. But if an evident-partiality determination did not require the resolution of material conflicts, there are no factual findings to which we must defer. *See Las Palmas Med. Ctr.*, 349 S.W.3d at 64-67.

Here, Cole's and Piske's recollections regarding their relationship differed with respect to details, but the material facts are undisputed: Jenkins previously

8

had been a guest at Cole's Galveston home, Jenkins and Cole were weekend guests at a mutual friend's ranch along with six-to-eight other couples, Cole previously had arbitrated a dispute for Jenkins, and Cole had mediated at least five disputes for Jenkins. We conclude Cole failed to disclose facts which might, to an objective observer, create a reasonable impression of his partiality. *See Tenaska Energy, Inc.*, 437 S.W.3d at 525; *see also Builders First*, 515 S.W.3d at 458.

Pointing to the limited nature of their interactions, Piske asserts Cole and Jenkins "never shared a deep friendship or anything other than a trivial social relationship." We reject this argument because the evident-partiality standard does not allow us to evaluate interactions in light of the entire relationship — rather, we must consider the facts from an objective observer's point of view. *See Tenaska Energy, Inc.*, 437 S.W.3d at 525; *see also Builders First*, 515 S.W.3d at 458. Here, Cole's and Jenkins' personal and professional connections might give an objective observer a reasonable impression of Cole's partiality. *See Tenaska Energy, Inc.*, 437 S.W.3d at 525; *Builders First*, 515 S.W.3d at 458.

Piske relies on *International Bank of Commerce-Brownsville v. International Energy Development Corp.*, 981 S.W.2d 38 (Tex. App.—Corpus Christi 1998, pet. denied), to support his contention that Cole's and Jenkins' interactions do not rise to the level of evident partiality. The facts of *International Bank* are readily distinguishable from the circumstances presented herein. There, the appellant argued the arbitrator exhibited evident partiality by failing to disclose his association with one of the appellee's attorneys. *Id*. at 43-44. Rejecting the appellant's evident-partiality claim, the court noted the arbitrator and attorney only had "met infrequently over the past thirty-plus years" and "encountered one another perhaps two or three times a year outside the courtroom at professional conferences, luncheons, and similar functions." *Id*. at 45-46. Unlike the

9

relationship at issue here, the arbitrator and attorney in *International Bank* "did not otherwise socialize or visit one another's homes." *Id*. at 45. Piske's reliance on *International Bank* therefore is misplaced.

## C. Waiver

Lange filed her motion to vacate in September 2017, arguing that Cole's undisclosed friendship with Jenkins exhibited evident partiality. Lange's motion states that Jenkins' July 12, 2017 email — in which she referred to Cole as a "friend" (about whom she thought a great deal) — was "the first disclosure that Lange or her counsel ever received of any friendship or other social relationship between Cole and Jenkins." Piske asserts Lange waived her complaint as to Cole's partiality by failing to raise the objection until approximately two months after Jenkins' email. Guided by the Texas Supreme Court's reasoning in *Tenaska Energy, Inc.*, 437 S.W.3d at 528-29, and *TUCO Inc.*, 960 S.W.2d at 637-38, we reject Piske's argument.

In *Tenaska*, the arbitrator disclosed that (1) the appellee's law firm, Nixon Peabody, had recommended him as an arbitrator in three other arbitrations, and (2) he was the director of a litigation services company and, in that capacity, had attended a meeting at Nixon Peabody. 437 S.W.3d at 520. However, the arbitrator also said there was no indication his company and Nixon Peabody would ever do business. *Id*. There, the arbitrator's contacts with Nixon Peabody were more considerable than his disclosures demonstrated — "extensive discovery" revealed that (1) the arbitrator's contacts with Nixon Peabody were specifically with the appellee's attorneys, (2) the arbitrator previously had met with those same attorneys to solicit business for his company, and (3) one of the attorneys edited the arbitrator's disclosures to minimize their contacts. *Id*. at 525-26. Rejecting the appellee's waiver argument, the Texas Supreme Court stated:

10

> [The appellant] did not waive its evident partiality challenge by proceeding to arbitration based upon information it was unaware of at that time. To hold otherwise would put a premium on concealment in a context where the Supreme Court has long required full disclosure.

*Id.* at 528 (internal citations omitted).

Similarly, in *TUCO Inc.* the arbitrator disclosed that he previously had served as an expert witness in two matters for the appellee's arbitrator's law firm. 960 S.W.2d at 638. The arbitrator failed to disclose that the firm also assisted him in obtaining a substantial referral during the course of the arbitration. *Id.* at 637-38. The Texas Supreme Court rejected the appellee's waiver argument, concluding that "it is for the parties to determine, after full disclosure, whether a particular relationship is likely to undermine an arbitrator's impartiality." *Id.*

Like the appellants in *Tenaska* and *TUCO Inc.*, Lange did not waive her evident-partiality claim by proceeding with the arbitration after Jenkins' July 12, 2017 email. Jenkins' email referred to Cole as a "friend" but did not disclose the later-discovered extent of their personal and business connections. Moreover, the email's overall tone indicated Jenkins' frustration with the delay in Cole's issuance of his ruling. The email encouraged Cole to rule on the arbitration "as quickly as possible," informing him that his delay in issuing the award "was beyond anything the parties should have to endure." This email and Jenkins' reference to Cole as a "friend" did not constitute a full disclosure of Cole's and Jenkins' relationship.

We sustain Lange's first issue and conclude Cole exhibited evident partiality by failing to disclose the extent of his personal and professional connections with Jenkins. Because we sustain Lange's first issue, we do not reach her challenges addressing the trial court's denial of her motion for new trial and motion for continuance.

## CONCLUSION

We affirm the trial court's October 2, 2017 divorce decree in so far as it grants Lange's and Piske's divorce, but we reverse the remainder of the divorce decree and remand for further proceedings consistent with this opinion.


/s/    Meagan Hassan
       Justice


Panel consists of Justices Christopher, Jewell, and Hassan (Jewell, J., concurring).